UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BAKER'S ISLAND LIGHTHOUSE PRESERVATION SOCIETY, INC. And ROBERT LEAVENS<br>　　　　Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF INTERIOR, SECRETARY OF THE INTERIOR, NATIONAL PARK SERVICE, DIRECTOR NATIONAL PARK SERVICE, CRAIG MANSON, As He Is Assistant Secretary Of Fish, Wildlife And Parks, JANET SNYDER MATTHEWS, As She Is Associate Director, Cultural Resources, National Park Service, BRIAN SWEATLAND, As He Is Special Assistant to the Office Of The Director, National Park Service, ADMINISTRATOR OF GENERAL SERVICES, GENERAL SERVICES ADMINISTRATION, and JOHN KELLY, As He is Acting Director of Property Disposal, General Services Administration<br>　　　　Defendants | C.A. No. 05-10855 PBS |

## PLAINTIFFS' MOTION TO REVERSE THE DECISIONS AND TO ENLARGE THE ADMINISTRATIVE RECORD

The Plaintiffs[1] hereby move a to reverse the two decisions (the "Decisions") that are the subject of this APA appeal, namely, the decision of the National Park Service ("NPS") dated July 14, 2004 by Defendant Janet Snyder Matthews, Associate Director, Cultural Resources

---

[1] The Plaintiffs are Baker's Island Lighthouse Preservation Society, Inc. ("the Society" or "BILPS") and Robert Leavens ("Leavens").

recommending the Essex Heritage National Commission, Inc. ("the Commission") as the recipient of the Baker's Island Light Station ("the Light Station") under the National Historic Light House Preservation Act ("NHLPA") and the January 18, 2005 decision of Craig Manson of the Department of Interior, Assistant Secretary of Fish, Wildlife and Parks, confirming the recommendation of the NPS to convey the Light Station to the Commission. Plaintiffs also challenge the preliminary, procedural and intermediate agency action of the NPS and the General Services Administration ("GSA") underlying the Decisions appealed from, and move to enlarge the administrative record due to the misconduct of the defendants. Since the Decisions and the administrative action (or failure to act) underlying the Decisions are arbitrary, capricious, an abuse of discretion and contrary to law, the Decisions should be reversed in accordance with 5 U.S.C. §706 (2)(A) (D) and (F).

As grounds for this motion, plaintiffs cite the following legal errors and improper conduct committed by the defendants in placing the Light Station in the NHLPA process, in implementing NHLPA and in making the Decisions:

1) The Decisions were made without "a process and policies for identifying, and selecting, an eligible entity" to which the Light Station could be conveyed. In NHLPA, Congress specifically commanded that such a process and policies be developed no later than October 24, 2001, years before the Decisions were made;

2) The selection of the Commission as the "eligible entity" is unlawful because: (i) the Commission's physical jurisdiction does not extend to Baker's Island (ii) in creating the Commission, Congress did not empower it to own real estate; and (iii) the Commission's Management Plan required by Congress does not permit the Commission to undertake construction projects or to conduct facilities maintenance.

3) The government has no deed to the real estate, no valid legal description of the real estate and no good title to the real estate; therefore, the Light Station cannot legally be conveyed through the NHLPA process rendering the process invalid.

ID # 464016v01/14457-2/ 03.15.2006

4)     Jurisdiction over the Light Station has reverted to the Commonwealth of Massachusetts and the federal government, having no further jurisdiction over the Light Station, cannot transfer the Light Station through the NHLPA process.

5)     In order for a Light Station to be conveyed through the NHLPA process, it must be "excessed" by the USCG in accordance with the definition of "excess" in the Administrative Services Act. The Light Station was not legally excessed under this definition and therefore does not qualify to be transferred through the NHLPA process.

6)     Prior to making the decision, the NPS preselected the winning applicant, then deliberately mispresented the status of its evaluation to the plaintiffs and, in announcing its preselected winner, a NPS official threatened the plaintiff, BILPS, against an appeal.

7)     The defendants have failed to meaningfully respond to a series of Freedom of Information Act requests ("FOIA") submitted over a one and half year period of time regarding the procedures it employed in making the Decisions, the appeals process and the Congressional mandate that the Commission, through its own fund raising match one million dollars it receives annually from the NPS;

8)     In order to cover up that the Decisions were made without a process and policies mandated by Congress, after months of failing to identify the process and policies as requested under FOIA, the agencies decided to defend this case by inventing the idea that the process and policies required by Congress were contained in the NPS application form and in a flow chart on the NPS Website, both of which are patently insufficient to satisfy the statutory command.

9)     After being sued, the government produced a "cleansed" administrative record which omits numerous highly relevant documents in the plaintiffs' possession including documents which are, in fact, harmful to the government's positions in this case.

10)     In selecting the Commission as the eligible entity, the NPS engaged in a conflict of interest, demonstrated bias in favor of the Commission and did not treat the two applicants, the Commission and the Society, on an equal footing as required by NHLPA. Examples include but are not limited to:

    a)  the NPS, who is the decision maker, grants the Commission approximately $900,000 to one million dollars annually and was also the co-applicant with the Commission in submitting its proposal to acquire the Light Station, while the Society receives no federal funding and did not have NPS as a co-applicant;

    b)  the Commission and NPS, as allowed by the Commission's enabling legislation, have entered into cooperative agreements so that NPS can assist

        the Commission in carrying out its programs, while the Society has no such cooperative agreement with NPS;

    c) an NPS employee prepared a portion of the Commission's application, while no such assistance was made available to the Society;

11) As a result of NPS bias in favor of the Commission, numerous misstatements, omissions and errors in the Commission's application concerning matters of high importance under NHLPA, such as ensuring the public safe access to the Island, insurance, security, transportation, energy needs, sanitation and fire prevention/control were given scant or no attention by the NPS decision-makers, who thereby abused their discretion compelling reversal of the Decisions.

In support of this motion, the Plaintiffs submit:

1. A memorandum of law in two volumes;

2. The Affidavit of Robert Leavens, with exhibits;

3. The Affidavit of Elizabeth M. Ware, with exhibits;

4. The Affidavit of Thomas Hallowell; and

5. The Affidavit of Steve Adelson; and

## **Conclusion**

The government's legal errors and misconduct as detailed above and in the supporting affidavits and memorandum of law amply justify consideration of matters outside of the so-called "administrative record" submitted by the government in this case and, moreover, justify a determination that the Decisions are legally erroneous, arbitrary and capricious, an abuse of discretion and must be reversed.

**Respectfully Submitted,**

**BAKER'S ISLAND LIGHTHOUSE PRESERVATION SOCIETY, INC. AND ROBERT LEAVENS**

By their attorney,


 /s/Catherine J. Savoie
Catherine Savoie, BBO #544599
Ian Moss, BBO#658557
POSTERNAK, BLANKSTEIN & LUND, L.L.P.
The Prudential Tower
800 Boylston Street
Boston, MA  02199
(617) 973-6100

ID # 464016v01/14457-2/ 03.15.2006