UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BAKER'S ISLAND LIGHTHOUSE PRESERVATION SOCIETY, INC. And ROBERT LEAVENS<br>　　　　　Plaintiffs,<br>v.<br><br>UNITED STATES DEPARTMENT OF INTERIOR, SECRETARY OF THE INTERIOR, NATIONAL PARK SERVICE, DIRECTOR NATIONAL PARK SERVICE, CRAIG MANSON, As He Is Assistant Secretary Of Fish, Wildlife And Parks, JANET SNYDER MATTHEWS, As She Is Associate Director, Cultural Resources, National Park Service, BRIAN SWEATLAND, As He Is Special Assistant to the Office Of The Director, National Park Service, ADMINISTRATOR OF GENERAL SERVICES, GENERAL SERVICES ADMINISTRATION, and JOHN KELLY, As He is Acting Director of Property Disposal, General Services Administration<br>　　　　　Defendants | C.A. No. 05-10855 PBS |

## AFFIDAVIT OF ROBERT LEAVENS, INDIVIDUALLY, AND AS A DIRECTOR _AND PRESIDENT_ OF BAKER'S ISLAND PRESERVATION SOCIETY.

I, Robert Leavens, being duly sworn, depose and say as follows:

1

## I.     Background Facts

1.     At the outset of this action I was a director and not president of the Baker's Island Lighthouse Preservation Society, Inc., and a named plaintiff in this action. I am presently the president of the Baker's Island Lighthouse Preservation Society, Inc.

2.     Baker's Island Lighthouse Preservation Society, Inc. ("the Preservation Society") is a 501(c) (3) non-profit preservation organization comprised of some residents of Baker's Island, an island consisting of approximately 60 acres located in Salem Sound, Essex County, Massachusetts.

3.     The Light Station consists of 10 acres more or less and contains a 59 foot high granite light tower constructed in 1816, a two story wood frame keepers dwelling, a two story wood frame assistant keepers dwelling, a one story oil house, a one story fog signal building and several other accessory structures ("Property").

4.     I, Robert Leavens ("Leavens"), own approximately one quarter acre of land on Baker's Island, shown on the Salem Tax Assessor's map 46 as lot 89, which land shares an approximate 200 foot common boundary with the Baker's Island Light Station and Reservation ("the Light Station" or "the Reservation" or "the Property") which is the subject matter of this lawsuit.

## II.     Research Concerning the History of Baker's Island Lighthouse

5.     On April 8, 1796, the United States Congress approved an act authorizing the erection of a lighthouse on what was privately owned land located on Baker's Island, a 60 acre Island situated in Salem Sound, Essex County, Massachusetts ("The Congressional Act"). (A copy of the language of this Congressional Act dated April 8, 1796 is attached as <u>Ex. A</u>, BILPS0491).

2

6.    On June 18, 1796, the Commonwealth of Massachusetts passed an act that ceded State jurisdiction over the land found "necessary and convenient for the light" house that Congress had authorized to be built on Baker's Island and established a procedure to be followed should it be necessary for the land to be taken. Civil and Criminal process jurisdiction was not ceded as this was a significant concern of the many states at this time. It should be noted that only the jurisdiction of the land was ceded and not the actual fee as the land was in private ownership. (A copy of this document as I found it located in U.S. Coast Guard Civil Engineering Unit Providence, in Warwick, Rhode Island in their historical file on the Baker's Island Light Station, dated June 18, 1796 is attached as Ex. B, BILPS0492-0494).

7.    Efforts were made to acquire the Property from its owner at that time, a Mr. George William Erving, of London, England, without success.

8.    The lighthouse was built, in the summer and fall of 1797, regardless of the United States' lack of title.

9.    In the July 1797 Term of the Court of the General Sessions of the Peace, the Court ordered that "three freeholders, impartial men to determine a just equivalent to the owner of such land." (A copy of this document as provided by Elizabeth Bouvier, head of archives, Supreme Judicial Court Archives, Boston, MA, is attached as Ex. C, BILPS0495-0496).

10.    In the October 1797 Term of the Court of the General Sessions of the Peace, the appraisers reported that the land had been appraised at $500 and that the Court accepted the report and the award. (A copy of this document as provided by Elizabeth Bouvier,

3

head of archives, Supreme Judicial Court Archives, Boston, MA, is attached as Ex. D, BILPS0497-0499).

11.     However I have located no evidence of this amount ever having been paid to the owner, nor is there any deed recorded, any order of taking, or any other form of conveyance despite the recording system being well established in Massachusetts from the late 1600s on. Likewise, the United States has provided no such evidence despite requests to do so via both litigation discovery and via requests made under the Freedom of Information Act.

12.     In addition to the Preservation Society's request for documents and Freedom of Information Requests I also searched the Southern Essex Registry of Deeds in Salem, MA. and the Federal Archives located at Trapelo Road in Waltham, Massachusetts including everything on microfiche archives from 1795 through 1815. In addition I inquired through correspondence and telephone calls with Ms. Elizabeth Bouvier, head of archives, Supreme Judicial Court Archives, Boston, MA, and was informed that, to her knowledge, there was no Court Order or similar document concerning the Baker's Island Lighthouse in the archives. In addition I have inquired through telephone calls, correspondence, meetings, with representatives of the United States Coast Guard Civil Engineering Unit located in Warwick, Rhode Island as well as having undertaken my own research within their archives.

13.     This lack of deed or conveyance of any kind is further compounded by the fact that it is clear to me, as a result of my review of the archives, that Benjamin Lincoln, the Superintendent for Lighthouses in the District of Massachusetts; and Tench Cox, Commissioner of the Revenue of the Treasury Department, recognized the need to record

4

such a deed and made reference to this requirement in certain letters they sent during this time.

14.     The United States also appear to admit this flaw in their chain of title and note the requirement for, and lack of, a recorded conveyance of some form. (A copy of an email from Angela Kalkhoran to Saundra A. Robbins, dated November 28, 2002 can be found in the Administrative Record at GSA0096).

15.     On February 14, 2005, Elizabeth Ware made a FOIA request to Saundra Robbins of the General Services Administration for any and all deed information relative to the Baker's Island Light Station. (Ex. 14o. In Elizabeth Ware Affidavit). On February 8, 2005 we received an e-mail from Ms. Robbins stating that what was sent was the extent of the information that the GSA possessed and that, if we had any further information above and beyond what the GSA had, her request was that we "please share" the information. See Exhibit 15 m. In Elizabeth Ware Affidavit. This indicates that they do not have a deed to the Baker's Island Light Station.

16.     In 1901 the United States entered into a land swap with Henry W. Morse, one of the abutters of the Property, to overcome a problem with the United States' incorrect location of a fence. (These deeds were recorded in the Southern Essex Registry of Deeds in Salem, MA. Copies of these Ex. E, BILPS0500-0503).

17.     Throughout its history, Baker's Islanders have played an important role in preserving, guarding and maintaining the Baker's Island Light Station and Reservation.

18.      In the early 1970's the Coast Guard "abandoned" the property when the light became automated. After the Coast Guard's abandonment, the Baker's Island Association, an association of home-owners on Baker's Island ("the Association")

5

assumed the maintenance and repair of the buildings through a license agreement with the Coast Guard. (A copy of the license agreement is attached as Ex. F) (BILPS0504-0508).

19.     On or around November 21, 1976 the Light Station was designated a National Register Historic Site by the National Park Service. (A copy of the United States Coast Guard's nomination to the Historic Register, dated March 31, 1976 is attached as Ex. G) (BILPS0509-0510). It is of note that description of the property in this nomination erroneously references the property boundary after the 1901 land swap and is therefore factually incorrect.

20.     Except for the Light Reservation, virtually all the remaining property on Baker's Island has been privately owned since 1731.

21.     In 1980, the Coast Guard and the Association entered into a license agreement whereby the Association undertook to maintain, restore, and preserve the two light house keepers' residences.

22.     In 1988, a license was granted to the Association for a period of thirty years by the Coast Guard allowing the Association to use and preserve the residences.

23.     The Association has faithfully restored, preserved and managed the residences continuously since 1980 and, under its license, plans to continue to do so until 2017.

24.     The Preservation Society was formed in 1999 in anticipation of the eventual disposal of the Light Reservation by the Coast Guard.

25.     Due to the remote location of the Reservation and the lack of public docking or landing facilities, physical access to the Reservation is not readily available. The beach is

ID # 463041v05/14457-2/ 03.15.2006

dotted with jagged rocks and is subject to heavy swells, breaking waves and strong current.

26.    In addition, the area experiences a significant tidal range of twelve feet that presents a range of beach profiles depending on the tidal stage.

27.    In adverse weather conditions, access to the Island poses a significant and serious safety threat.

**III.    The National Light House Preservation Act Application Process.**

28.    Pursuant to National Historic Lighthouse Preservation Act, 16 U.S.C. §470 w-7 (b)(1), no later than October 24, 2001, the Secretary of the Interior and the Administrator of the General Services Administration were required to establish a process and policies for identifying and selecting an eligible entity to which a historic light station could be conveyed, and for monitoring the use of the light station by the entity.

29.    On information and belief, no such process and policies were established.

30.    As late as November, 2004, I was informed that no such process and policies existed.

31.    On March 10, 2005, I was informed that a "draft National Park Service Regional Handbook for implementing NHLPA" had been developed. The Handbook was requested and received on May 7, 2005. At this point in time, I had been looking for evidence for guidelines of policies and procedures for over a year and a half. The government has admitted repeatedly that this Handbook was not utilized during the decision making process with regard to the Baker's Island Light Station challenged herein. (Copies of these admissions can be found in the Administrative Record at AR0676, AR0680-0681).

ID # 463041v05/14457-2/ 03.15.2006

32.     Notwithstanding that no process and policies were established under NHLPA, and that the GSA does not have a valid deed or good title or the power to convey the Light Station, on or around May 23, 2003 a Notice of Availability under the Act for Baker's Island Light Station was issued by the GSA, through its agent John Kelly, promising to convey the Light Station to the eligible entity selected by the Department of Interior. (The Notice of Availability is located in the Administrative Record ("AR") at AR002-004.)

33.     Also according to the Notice of Availability, only shoreline access to the Island is available because the only pier providing access to the Island is privately owned and operated. The Notice of Availability also represented that no submerged lands were to be conveyed with the lighthouse property.

34.     In response to the Notice of Availability the Preservation Society prepared and submitted an application to the United States Department of the Interior, National Park Service on October 31, 2003. Clearly the expense of preparing this application would not have been undertaken had it been known that the government had nothing to convey. (A copy of the Preservation Society's application can be found in the Administrative Record at AR0127-0230).

35.     The Essex National Heritage Commission is the designated management entity for the Essex National Heritage Area and is incorporated in the Commonwealth of Massachusetts as a tax-exempt, 501 ( c) (3) Corporation.

36.     The Heritage Commission was created as the management entity for the Essex National Heritage Area pursuant to the Omnibus Parks and Public Land Management Act

8

of 1996. (A copy of this enabling language can be found in the Administrative Record at AR0396-0399).

37.     Designation of the Essex National Heritage Area is found in §503 (a) and (b) of the Omnibus Parks and Public Land Management Act of 1996, pursuant to which the Area "shall comprise the lands generally depicted on the map numbered NAR-51-80,000, dated August, 1994". (A copy of this language can be found in the Administrative Record at AR0397).

38.     Baker's Island is not on the map designating the boundaries of the Essex National Heritage Area.

39.     The boundaries shown on the map referred to in the legislation do not include Salem Sound in which Baker's Island is situated.

40.     The ENHC's application for the Baker's Island Light Station includes a plan that designates the area. Said plan is shown as "Attachment D" to their application. "Attachment D" does not show Baker's Island Light Station within the Essex National Heritage Area ("ENHA") (A copy of this plan can be found in the Administrative Record at AR0324-0328).

41.     The authority of the Heritage Commission is established in §504 (a) and (b) of the Omnibus Parks and Public Land Management Act of 1996, which sets forth the duties and powers of the Commission. Ownership in land is not included within the powers of the Commission granted in the statute. (A copy of this language can be found in the Administrative Record at AR 0397-0398).

42.     §508 of the Omnibus Parks and Public Land Management Act of 1996 authorizes federal appropriations to be made to the Heritage Commission, but limits the

9

appropriations to not more than one million dollars in any fiscal year and requires that the federal funding provided may not exceed 50% of the total cost of any assistance or grant provided or authorized under the statute. (A copy of this language can be found in the Administrative Record at AR0399).

43.    The Heritage Commission is required to match funding dollar for dollar in order to conduct its activities.

44.    I am informed and believe that the Heritage Commission has continually accepted funding for the Area but is unable to establish that it has met its requirement of matching funds for any of its activities or that it has ever met its requirement of matching nearly one million dollars in funding per year.

45.    Notwithstanding that the Heritage Commission is unable to establish that it has met its match and that the Heritage Commission is not empowered to own real estate and that Baker's Island and the Light Station are not within the Heritage Commission's jurisdiction limited by Congress, the Commission nevertheless submitted an application to become the transferee of the Light Station which application contains numerous misrepresentations.

46.    For example, the Commission's application erroneously claims that the Island is currently accessible "by private pier, by beach landing or by helicopter pad adjacent to the lighthouse". The Commission's application states that the lighthouse property has "excellent beach front access". In truth and in fact, access to the lighthouse property is exceedingly dangerous in many weather conditions that characterize coastal New England and, from information and belief, the Coast Guard itself has refused to land its own personnel on the beach, has deemed such landing unsafe, and has refused to permit

10

helicopter landings for the recipient of the Light Station. (A copy of the Commission's application and comments concerning access can be found in the Administrative Record at AR0247-0248).

47.     The Commission's application states that the one million dollars it receives annually through the Department of Interior are matched by donations, in kind contributions, state and other non-matching funds at an average ratio of 1.8 to 1 million dollars funding. The Commission is required by its enabling legislation to match funds it receives annually. I am informed and believe that the Commission has never met its match in any year in which it has been in operation, cannot meet its match, and has insufficient funds to conduct its proposed operations on Baker's Island.

48.     On or about August 26, 2003 the General Services Administration held its official site visit of the Baker's Island Light station. Both parties interested in securing the "deed" to the Light Station attended this site visit.

49.     On or about May 19, 2004, P. Daniel Smith ("Smith") of the Department of the Interior conducted another site visit of the Baker's Island Light Station. Smith arrived at the island via a U.S. Coast Guard boat and conducted a site visit with the two entities who had submitted applications to secure the "deed" to the Light Station: the Essex National Heritage Commission and the Baker's Island Lighthouse Preservation Society.

50.     At the May 19, 2004 site visit, Smith informed representatives of the Society that (a) the Heritage Commission, and not the Preservation Society, would most likely prevail in being selected as the transferee of the reservation; (b) Smith, personally, would write the recommendation to the Secretary of the Interior as to who should be the recipient of the "deed"; and that (c) the Society should be aware that he would write the

recommendation so that it would be impregnable to any appeal of the Society and would be acceptable to the Secretary of the Interior.

**IV.    To Transfer the Property Under NHLPA the United States Must Excess the Property, Which It Has Not Been Done in this Instance.**

51.    The NHLPA requires that, in order for a Light Station to be included in the NHPLA process, it must be excessed pursuant to the definition of "excess" in the Administrative Services Act of 1949 (40 USC 472(e)).  In order to meet this definition, the Agency must no longer need the Light Station for "the discharge of its responsibilities".

52.    However the Coast Guard continues to discharge its responsibilities on the Property in that the Light Station, or at least the tower, will continue to be used as an aid to navigation (ATON).

53.    The Light Station is only excessible if the Agency no longer requires the use. However, the Notice of Availability requires an ATON easement to be maintained, and hence it is inherent that the use has not been discontinued.

54.    Therefore the Baker's Island Light Station is not currently eligible to be included in the NHLPA at all or to be excessed.

55.    Furthermore, if the Baker's Island Light Station or any part of it were to be excessed, the jurisdiction over the property would revert to the Commonwealth of Massachusetts, automatically per the 1796 Act. Therefore, the Baker's Island Light Station would not be eligible for the NHLPA, because it is not under the jurisdiction of the United States anymore.

ID # 463041v05/14457-2/ 03.15.2006

V.     **The Decision of the National Park Service**

56.     On or around July 14, 2004, Baker's Island Light House Preservation Society was informed by defendant Janet Snyder Matthews, Associate Director, Cultural Resources, National Park Service, Department of Interior, that the National Park Service had chosen the Essex National Heritage Commission as the recipient of the Baker's Island Light Station in accordance with NHLPA. (A copy of this letter can be found in the Administrative Record at AR0652-0653).

57.     On or around July 27, 2004, the Preservation Society submitted to defendant Craig Manson, Assistant Secretary for Fish, Wildlife and Parks, United States Department of Interior, a request for administrative review, to review the National Park Service recommendation that the Secretary of the Interior select the Commission as the recipient of the Light Station. (A copy of this request can be found in the Administrative Record at AR0668).

58.     On or around July 26, 2004, I, Robert Leavens, submitted supplementary information for the appeal of the July 14, 2004 decision on behalf of the Preservation Society and on behalf of himself as a direct abutter and as a director of the Preservation Society. (A copy of this submission can be found in the Administrative Record at AR0659-0667).

59.     According to the stated procedures, the Administrative review was supposed to have been completed within 60 days (or September 28, 2004) after the request for review. On or around January 18, 2005, defendant Manson issued his response to the request for administrative review confirming the National Park Service recommendation that the Baker's Island Light Station be transferred to the Commission. The Preservation Society

13

was not informed until February 9, 2005, by overnight mail. (A copy of this response can be found in the Administrative Record at AR0721-0722).

60.     I have also attached to this affidavit a copy of a document entitled "Attorney's Report of Title" dated October 26, 1973, as <u>Ex. H</u> (BILPS0511-0516). I found this document in the records reviewed at the U.S. Coast Guard Civil Engineering Unit Providence, in Warwick, Rhode Island.


SIGNED AND SWORN UNDER THE PAINS AND PENALTIES OF PERJURY THIS ___ DAY OF MARCH, 2006.


/s/Robert Leavens_____
Robert Leavens

ID # 463041v05/14457-2/ 03.15.2006

EXHIBIT

"A"

thence to the end of the next session of Congress thereafter, and longer.

APPROVED, March 31, 1796.

STATUTE I.

April 8, 1796.

CHAP. XII.—*An Act authorizing the erection of a Lighthouse on Baker's Island in the state of Massachusetts.*

Secretary of the Treasury to provide by contract for building a lighthouse on Baker's Island.

*Be it enacted by the Senate and House of Representatives of United States of America in Congress assembled,* That the Secretary of the Treasury be, and he is hereby authorized and directed, to provide by contract, which shall be approved by the President of the United States, for building a lighthouse on Baker's Island, near the entrance into the harbor of Salem and Beverly, in the state of Massachusetts (as soon as a cession of the jurisdiction, to the United States, over the land proper for the purpose, is made by the said state) and to furnish the same with all necessary supplies. And also, to agree for the salary or wages, of the person or persons, who may be appointed by the President, for the superintendence and care of the same; and that the President be authorized to make the said appointments: That the number or disposition of the light or lights, in the said lighthouse, be such as may tend to distinguish it from others, as far as is practicable: And that six thousand dollars be appropriated for the same, out of any monies not otherwise appropriated,

Appropriation therefor.

APPROVED, April 8, 1796.

STATUTE I.

April 18, 1796.

CHAP. XIII.—*An Act for establishing Trading Houses with the Indian Tri*

Act of March 30, 1792.

President to establish trading houses,

SECTION 1. *Be it enacted by the Senate and House of Representati of the United States of America in Congress assembled,* That it sh be lawful for the President of the United States, to establish trad houses at such posts and places on the western and southern fronti or in the Indian country, as he shall judge most convenient for the p pose of carrying on a liberal trade with the several Indian nations, wit the limits of the United States.

1806, ch. 48.

and appoint agents for them,

SEC. 2. *And be it further enacted,* That the President be authori to appoint an agent for each trading house established, whose dut shall be, to receive, and dispose of, in trade, with the Indian nati aforementioned, such goods as he shall be directed by the President the United States to receive and dispose of, as aforesaid, according the rules and orders which the President shall prescribe; and every s agent shall take an oath or affirmation, faithfully to execute the tr committed to him; and that he will not, directly or indirectly, be c cerned or interested in any trade, commerce or barter, with any Ind or Indians whatever, but on the public account; and shall also give bor with sufficient security, in such sum as the President of the United Sta

their duties,

and oath.

To give bond.

BILPS0491

EXHIBIT "B"

Commonwealth of Massachusetts.

In the year of our Lord one thousand seven hundred & ninety six.    An act to cede to the United States the Jurisdiction of the tracts of land, which shall be required for the Light Houses authorized by Congress, to be erected upon Bakers Island & Cape Cod.

Be it enacted by the Senate & House of Representatives in General Court assembled, & by the authority of the same, that the United States of America may purchase or take as hereinafter is provided, any tracts of land which shall be found necessary & convenient for the light houses, authorized by Congress to be erected Bakers Island, & upon Cape Cod, within the Commonwealth, & during the continuance of the use & appropriation aforesaid, the Jurisdiction of such tracts of land, not exceeding the quantity of ten acres for each light house shall be, & hereby is, ceded to, & shall be in, the said United States: saving & provided always, that all civil & criminal process issued under the authority or by any officers of this Commonwealth shall have full force & effect within the said tracts of land, & any buildings which shall be then erected, this cession of Jurisdiction notwithstanding.

And be it further enacted, that if the agent or person employed for the United States, & the owner or

BILPS0492

owners of any tract or tracts of land which shall be found necessary & convenient for the said Light houses, cannot agree in a sale & purchase thereof such agent or person employed may apply to any court of general sessions of the peace which shall be holden within & for the county wherein such land lies, who shall & may appoint a committee of three freeholders, impartial men to determine a just equivalent to the owner or owners of such land, which committee shall be sworn before some justice of the peace for the faithful discharge of their trust, & shall forthwith proceed to view, set off & appraise such tract or tracts of land, & shall make return of their doings to the same court; & which award & return being accepted by the court & the amount of such appraisement being paid to the owner or owners of the land appraised & set off by such committee, or if the owner or owners shall not appear or shall refuse to receive the same, to such person or corporation for the use of the owner or owners, as the same court shall order, the tract or tracts of land so appraised & set off shall be vested in the United States, & shall & may be taken, possessed & appropriated for the purposes afore-said.    Provided, that all charges of such application & appraisement shall be paid by the United States, and provided that the

BILPS0493

the land which may be set off for the pur-
poses of this act, shall not exceed the quan-
tity of ten acres in the whole for each light
house, including & reckoning therewith any land
purchased for the same,

In the House of Representatives June 18, 1796.
This bill having had three several readings
passed to be enacted,

Ed. H. Robbins. Spkr.

In Senate June 18. 1796. This bill having had
two several readings passed to be enacted,

Saml. Phillips. Prest.

June 18, 1796.
By the Governor,
Approved,
S. Adams,

A true copy attest
(signed) John Avery Secy. copy.

G. Taylor Jr.

BILPS0494

the value thereof ...... y
thereof & to shew cause if any they have why said Petitioner should
not have an abatement of her said Taxes, by serving said afforsaid
with an attested Copy of this Petition with their order of Court
thereon thirty days before said next Term of this Court —

EXHIBIT
11 C 11

On the Memorial of the Hon'ble Benjamin Lincoln Esquire
Superintendant of Light Houses &c. in the State of Massachu-
setts. Shewing that the General Court in their Sesion in June
1796. ceeded to the United States the Jurisdiction of a certain
tract of Land on Bakers Island not exceeding ten acres —
and also enacted that in case the person employed by the U-
nited States and the owner of the Land could not agree
in the value thereof, application should be made to this Court.
that said Memorialist has not had it in his power, tho often
attempted to purchase the Land of Mr Winthrop agent to
Mr Erving the owner, unless by giving a sum in the
opinion of said Memorialist more than double its real val-
ue and Praying that this Court would appoint a Com-
mittee of three Freeholders, impartial Men to determine
a Just equivalent to the owner of such Land —

Ordered that Mr Gideon Putnam, Joseph Wood & Parker
Cleaveland Esquires, freeholders in said County, impartial

Mem
B. Lin
Bake

?

*July Term 1797*

men be a committee to view, sett off & appraise any Tract or tracts of Land not exceeding Ten acres on Bakers Island ceded to the United States by the Commonwealth of Massachusetts for, a Light House thereon, the purpose of erecting & necessary & convenient for the same & to determine on a just equivalent to the owner or owners of such Tract or tracts of Land – Said committee are to be sworn to the faithful discharge of their trust before some Justice of the Peace, & are to give seasonable notice to the Honble Benjamin Lincoln, Esqr Superintendant of Light Houses in the State of Massachusetts and to the owner or owners of said Tract or tracts of land on Bakers Island or to his or their Agent or Attorney, of the Time & Place of their meeting for the purposes aforesaid & to make return of their Doings to this Court

BILPS0496

On examining the account of Joseph Turell under keeper of the Commonwealths Gaol in Salem in the County of Essex on oath exhibited the Court do find that the charges of supporting Prisoners in said Gaol unable to support themselves committed by due process of law upon charge or conviction of crimes against the Commonwealth and therein confined from May 1st 1793 to April 6th 1797 amount to the sum ninety eight pounds thirteen shillings & six pence equal to three hundred & twenty eight Dollars & ninety two cents:– that said Prisoners have not been able to pay any part thereof; that said Sum has been paid out of the County Treasury by order of said Court & is to be charged to the Com-

ay as jo now ......
in Gardners yard thence South 52 West Nine rods and ten links
which is there two rods & 16 links Wide thence South 46 West forty
.... Rods & 17 links and two rods and twenty two lengs wide
& that space thence South 53 West five rods & 10 links & two rods
12 links Wide to the old Way by Isaac Dodges Land. of which we
.ke thes over return for a public High Way - and whereas no Individ-
l appears to be damaged in his property we have made no estimation
any to any person - In testimony whereof we have hereunto put our
ands & seals this thirteenth day of June one Thousand seven hun-
red & ninety seven

John Manning & Seal
Parker Cleaveland & Seal
Jos:. Batchelder Jr & Seal
Richard Ward & Seal
Joshua Gieldengs & Seal

EXHIBIT
"D"

The foregoing report being read is accepted by the Court.
Ordered that the same be allowed & recorded & that the Way therein
'scribed be hereafter known for a public High Way

Bakers I.
Light House

The Committee appointed at last Term to view set off & appraise
tract of Land on Bakers Island for a Light House now report as follows
We the subscribers. the Committee appointed by the Court of Sessions
held at Salem for and within the County of Essex on the second Tues-
day of July last past to view set off and appraise any tract or tracts
f Land not exceeding ten acres on Bakers Island so called ceded
to the United States of America by the Common wealth of Massa-
chusetts for the purpose of erecting a Light House thereon & do report
that

October Term 1797

that we gave due & seasonable notice to the Hon'ble Benjamin Lincoln Esq'r Superintendant of Light Houses in the State of Massachusetts and to Thomas Lindall Winthrop Esq'r attorney to George William Erving the owner of said Island of the time and place of meeting, at Webbs tavern in Salem aforesaid on the first Wednesday of September instant- when and where we met accordingly and the weather proving so bad as not to permit our proceeding to the Island- and we receiving a letter from the Hon'ble Nathan Dane Esq'r Att'y giving us notice that Gen'l Lincoln and the said T. L. Winthrop agreed we should go on to view set off and appraise &c without their being present we appointed Monday the Eleventh day of Sept'r instant at Six of the Clock A.M. to meet at the House of Capt. Benjamin West upon the business- When and where we met and having been duly sworn we forthwith proceeded to said Island and have viewed set off and appraised ten acres of Land part of said Island for the purpose aforesaid in manner following Viz. Beginning at the Great Rock on the Northerly side of the Pond and from thence running North Seventy three degrees and five minutes West thirty nine poles & ten Links to the Sea bounding Southerly by the other part of said Island from thence running North Eleven deg & fifty minutes East Eleven poles and four Links: thence North twenty nine Deg thirty minutes East fifteen poles Eleven links: thence North Seventy nine Degrees and twenty minutes East Eleven poles & ten links: thence North Eighty Eight Degrees East twenty four poles & five links: thence

BILPS0498

from thence running North Eleven degrees & twenty minutes East Eleven
poles and four links: thence North twenty nine Deg: thirty minutes
East fifteen poles Eleven links: thence North Seventy nine Degrees
and twenty minutes East Eleven poles & ten links: thence North
Eighty Eight Degrees East twenty four poles & five links: thence
South forty four degrees East twenty three poles and Six links and
on all those Courses East mentioned bounding upon the Sea:
thence running South forty Eight degrees West thirty two poles &
ten links to the bound first mentioned — containing within those lines
ten acres. No allowance for Variation of the Compass is made —
and we the said Committee do hereby appraise said ten acres of land
bounded as aforesaid at the Sum of five hundred Dollars & do determine
& award that said Sum is a just equivalent to the owner of the same
Land set off as aforesaid.

In witness whereof we have hereunto set over hands & Seals this
                                                                twelfth

twelfth day of September in the year of our Lord seventeen hundred
and ninety Seven                    Gideon Putnam & Seal
                                    Joseph Wood    & Seal
                                Parker Cleaveland & Seal

BILPS0499

The aforegoing award & return being read is accepted by the Court

the payment of Five thousand dollars, and interest and fines as provided in my note of even date. A certain parcel of land situated in said DANVERS bounded and described as follows; Beginning at a point on the easterly side of Chase Street one hundred twenty four (124) feet from the northerly side of Hunt Street, and running in a northeasterly direction by land of Carrie A. Barry one hundred nine (109) feet five (5) inches, to a point, this line being distant four (4) feet from the northerly boundary of lot 23 on a plan hereafter mentioned; thence turning and running in a northerly direction sixty (60) feet to a point; thence turning and running in a westerly direction one hundred seven (107) feet six (6) inches to Chase Street; thence turning and running in a southerly direction by Chase Street sixty (60) feet to point begun at. Being the greater part of lot 22 and a small part of lot 21 on a plan by Andrew Nichols, and filed with the Essex South District Registry of Deeds Book 8, plan 49. Being the same premises which were conveyed to me by deed of George O. Stimpson dated November 10, 1915, and recorded with the Essex South District Registry of Deeds Book 2313, page 532. I hereby transfer and pledge to the said mortgagee 25 shares in the 47th series of its capital stock as collateral security for the performance of the conditions of this mortgage, and my said note upon which shares said sum of five thousand dollars has been advanced to me by the mortgagee. The monthly payments under this mortgage are forty seven and 92/100 dollars. In the event of an assignment of this mortgage, interest on the unpaid balance of the principal shall be at the rate of five and one half per cent. per annum. This mortgage is upon the Statutory Co-operative Bank Mortgage Condition, for any breach of which the mortgagee shall have the Statutory Co-operative Bank Power of Sale. WITNESS my hand and seal this fifth day of May 1916    Rose A. Manning    (seal)

Harry E. Jackson    )    COMMONWEALTH OF MASSACHUSETTS Essex

ss. May 5, 1916  Then personally appeared the above named Rose A. Manning and acknowledged the foregoing instrument to be her free act and deed,

before me    Harry E. Jackson  Justice of the Peace

Essex ss. Received May 5, 1916. 30 m. past 11 A.M. Recorded and Examined.

------------------------------------------------------------------------

Morse et al.

to

United States
of America

KNOW ALL MEN BY THESE PRESENTS that I, Henry W. Morse, of Salem in the County of Essex and Commonwealth of Massachusetts, in consideration of one dollar and other valuable considerations paid by the United States of America, the receipt whereof is hereby acknowledged, do hereby remise, release, and forever quitclaim unto the said United States of America, a certain parcel of land situate on BAKER ISLAND at the entrance of SALEM HARBOR in said Commonwealth of Massachusetts, bounded and described as follows: Beginning



BILPS0500

at the most southerly point of the boundary line of the land belonging to said United States at said Baker Island, at a point marked by a square stone post, cut with the letters U S L-H E; thence running north eighty two degrees, seven minutes and thirty seconds west (N 82° 07' 30" W) along the southern boundary line of the land belonging to the said United States, six hundred and eighty nine (689) feet, more or less, to the line of mean low water; thence southerly by mean low water to a point on mean low water line bearing north eighty five degrees, ten minutes and thirty seconds west (N 85° 10' 30" W) from the said point of beginning; thence running south eighty five degrees, ten minutes and thirty seconds east (S 85° 10' 30" E) seven hundred and ten (710) feet, more or less, to the point of beginning, containing thirteen thousand one hundred and thirty five (13,135) square feet, more or less.  Being a part of the premises conveyed to the said Henry W. Morse by deed from Nathan R. Morse dated March 25, 1897 and recorded in Essex Reg. of Deeds, So. District Book 1505, Leaf 580.  TO HAVE AND TO HOLD the granted premises, with all the privileges and appurtenances thereto belonging to the said United States of America and their successors and assigns, to their own use and behoof forever.  And I do hereby, for myself and my heirs, executors and administrators, covenant with the said grantee and their successors and assigns that the granted premises are free from all incumbrances made or suffered by me and that I will and my heirs, executors, and administrators shall warrant and defend the same to the said grantee and their successors and assigns forever against the lawful claims and demands of all persons claiming by, through, or under me but against none other.  And for the consideration aforesaid I, Rebecca H. Morse of said Salem, widow of Nathan R. Morse late of said Salem deceased do hereby release unto the said grantee and their successors and assigns all right of or to both dower and homestead in the granted premises.  IN WITNESS WHEREOF we the said Henry W. Morse and Rebecca H. Morse the said Henry W. Morse being unmarried hereunto set our hands and seals this fourteenth day of March in the year one thousand nine hundred and one.

| Signed, sealed and delivered in pres- | ) | Henry W. Morse | (seal) |
| ence of  six words being erased before | ) | Rebecca H. Morse | (seal) |
| signing. Frank V.Wright to H. W. M. | ) | COMMONWEALTH OF MASSACHUSETTS. |
| Helen B. M. Millett | ) | Essex ss. March fourteen 1901. |

Then personally appeared the above named Henry W. Morse and acknowledged the foregoing instrument to be his free act and deed,

        before me              Frank V. Wright    Justice of the Peace.

Essex ss. Received May 5, 1916. 30 m. past 11 A.M. Recorded and Examined.

------------------------------------------------

BILPS0501

The United States
of America
vs
H. W. Mow

Know all men by these presents that the United States of America in consideration of five dollars to it paid by Henry W. Moore of Salem in the County of Essex and Commonwealth of Massachusetts the receipt whereof is hereby acknowledged, do hereby give, grant bargain sell and convey unto the said Henry W. Moore a certain parcel of land at Baker Island in the Commonwealth of Massachusetts being a portion of the Light House reservation at said Baker Island heretofore required by the United States for light house purposes but no longer used for light house purposes and sold by the Secretary of the Treasury to the said Moore for said sum of five dollars under the authority of Section 4675 of the Revised Statutes of the United States which said parcel of land is more particularly described as follows Beginning at the most southerly point of the boundary line of the land belonging to said United States at said Baker Island, at a point marked by a square stone set in the ground with the letters U S L H E, thence running north thirty eight degrees fifty seven minutes and thirty seconds East (N 38° 57 30" E) one hundred and fifty (150) feet more or less to the line of mean low water, thence North westerly by mean low water to a point on said mean low water line bearing North thirty five degrees thirty nine minutes and thirty seconds East (N 35° 39 30" E) from the last point of beginning, thence running South thirty five degrees thirty nine minutes and thirty seconds West (S 35° 39 30" W) one hundred and fifty two (152) feet more or less to the point of beginning containing twelve thousand one hundred and forty (12 140) square feet more or less, being a portion of the premises described in the report of a committee to view set off and appraise land on Baker Island so called ceded to the United States of America by the Commonwealth of Massachusetts for the purpose of erecting a lighthouse thereon made to the Court of General Session of the Peace begun and holden at Newburyport within and for the County of Essex on the first Tuesday of October A.D. 1797 Recorded on pages 39 and 53 from Record Book entitled Session Records July 1796 March 1803 To have and to hold the granted premises with all the privileges and appur

and for their and assigns to their own use and behoof forever. In witness whereof the said United States of America by the Secretary of the Treasury hereunto duly authorized as aforesaid, has signed, sealed, executed acknowledged and delivered these presents this 18th day of February in the year one thousand nine hundred and one.

Washington,  ) L. J. Gage
& 6 April 190  ) Secretary of the Treasury (Seal)
A.D. 1901. Then )

Personally appeared the above named Lyman J. Gage Secretary of the Treasury, and acknowledged the foregoing instrument to be the free act and deed of the United States.  Before me

Jas. W. Fitzpatrick, Notary Public (Seal)

Received & Recorded Apr. 11 1901 10 m. past 14 m. the early    Willard J. Hale Reg.

Know all men by these presents that the Citizens co-operative Bank hereby acknowledges that the sum of Higgins of money secured by the within mortgage has been fully paid by James I. Higgins and in consideration thereof does hereby fully discharge said mortgage and release and quit claim unto the said James I. Higgins his heirs and assigns forever the premises herein described. In witness whereof the said Citizens co-operative Bank has caused its corporate seal to be hereunto affixed and these presents to be signed, acknowledged and delivered in its behalf by James W. Goodwin its Treasurer thereunto duly authorized the seventh day of April A.D. 1901.

In presence of —    ) Citizens co-operative Bank
Commonwealth      ) by James W. Goodwin    (Seal)
of Massachusetts. )   Treasurer

Essex ss. Haverhill April 11th 1901 Then personally appeared the above named James W. Goodwin Treasurer and acknowledged the foregoing instrument by him subscribed to be the free act and deed of the Citizens co-operative Bank.    Before me

Frances E. Pearl Justice of the Peace

Received & Recorded Apr. 11, 1901 15 m. past 22 m. the early   Willard J. Hale Reg.

BILPS0503



EXHIBIT
"F"

REVOCABLE LICENSE

The United States of America, acting by and through the United States Coast Guard, hereinafter referred to as "LICENSOR", hereby licenses to the Baker's Island Association, Baker's Island, Massachusetts 01970, hereinafter referred to as the "LICENSEE", in consideration of one dollar ($1.00) and further in consideration of mutual benefits to be derived therefrom and in agreement with the conditions and provisions hereinafter enumerated in all parts of this License, to be kept and performed by the LICENSEE, the use and occupancy of a certain residential building on U. S. Coast Guard Light Station, Bakers Island, Massachusetts, hereinafter referred to as the "station", marked in red on a plan of land entitled "Bakers Island, Light Station, Massachusetts", attached hereto as schedule A and made a part hereof said premises being situated at 42 degrees 32.2 minutes north latitude and 70 degrees 22.2 minutes west longitude together with the right to pass over certain other portions of the station for certain purposes as hereinafter set out.

This License is subject to the following terms and conditions:

Part I

1.  This License is granted for the period commencing 1 March 1980 and ending 28 February 1981, PROVIDED, however, notwithstanding any of the foregoing, this License may for any reason upon thirty (30) days written notice to the LICENSEE addressed to the Baker's Island Association Bakers Island, Massachusetts 01970.

2.  LICENSEE is to use the licensed premises for the purpose of providing protection and maintenance for the Coast Guard. No additional improvements and no personal property of the LICENSEE or any other person or corporation may be placed on the premises, with the exception of personal property of the caretaker. No substantial alteration in existing premises or facilities, or construction of permanent type improvements shall be made to the premises and no alterations or additions may be made to the premises except as expressly authorized herein or as may be permitted in writing previously secured from the LICENSOR. Any work done on the premises shall be without cost or expense to the LICENSOR and no work may be undertaken on the premises except as specifically authorized herein or except as the LICENSEE specifically permits, and then only for purposes necessarily incidental to the use of the premises as a residence for the caretaker. The LICENSEE, without expense or cost of the LICENSOR, shall properly post and keep posted the premises by signs to prohibit trespassers and warning that the premises and improvements are owned by the United States.

3.  LICENSEE shall without cost to the LICENSOR maintain the premises in a liveable and clean condition. For this purpose the LICENSEE may without cost or expense to the LICENSOR and without securing previous permission or approved plans from the LICENSOR, the Term and Condition immediately preceeding not withstanding, paint and clean the premises as necessary and make such repair, not amounting to alterations or additions to the premises, as necessary to correct any damage to the premises or to keep the premises liveable and clean.

4.  When and if the LICENSOR makes available to the LICENSEE such fuel tanks and fuel system as might be located on the station, LICENSEE agrees to accept such fuel tanks and fuel system in their then present condition, to maintain them in that condition and to keep them operable to the extent that they are operable when made available. LICENSOR agrees to sell to LICENSEE, and LICENSEE agrees to purchase from LICENSOR, such fuel as might be remaining in the aforesaid fuel tanks and fuel system when and if LICENSOR makes such fuel available to the LICENSEE the price thereof to be determined by standard rates prescribed by the General Services Administation for fuel of the quality and quantity involved. LICENSOR hereby assumes no responsibility for providing fuel or an operable fuel system to the LICENSEE.

LEGAL OFFICE
FIRST COAST GUARD DISTRICT
BOSTON, MASSACHUSETTS



5. When and if LICENSOR makes available to the LICENSEE electrical services, LICENSEE agrees to accept such electrical services and to maintain such services in their then present condition. Such electrical services will be metered at a location to be chosen by LICENSOR and LICENSEE will bear all responsibility for maintaining and operating the electrical services from the point of metering to and through the premises. LICENSEE hereby agrees to pay LICENSOR for such electrical services as might be provided at such times as LICENSEE is billed by LICENSOR, the billing to be based upon the rate charged to the LICENSOR for the electrical services provided. LICENSOR hereby assumes no liability to provide or maintain electrical services or to provide emergency electrical services in the event of any electrical service failure whether caused by acts of the LICENSOR or otherwise. Once electrical services have been made available by LICENSOR and accepted by LICENSEE, LICENSOR assumes no responsibility for any continuance of these electrical services.

6. When and if LICENSOR makes available to the LICENSEE water services and/or water works, LICENSEE agrees to accept such water services in their then present condition and to maintain such services and all water works connected therewith, including wells and pumps, in that condition. LICENSEE further agrees to install a sill cock on the exterior of the premises in order to make water available to LICENSOR and LICENSOR reserves the right to draw such water from the water services as might be needed by the LICENSOR at any time. If LICENSOR should relocate any water pumps associated with the water service, LICENSEE agrees to assume all expenses required to properly insulate and maintain such water pumps in an operable condition and agrees to maintain such pumps in such a condition. LICENSOR does not hereby assume any responsibility for providing operable or continuing water services to LICENSEE.

7. When and if LICENSOR makes telephone services available to LICENSEE, LICENSEE agrees to accept such service in their then present condition and to maintain them in that condition. LICENSEE further agrees to have all billings on such telephone service made directly to the LICENSEE from the time that such service is made available until such time as it might be terminated. LICENSEE further agrees to install no additional or remove or relocate any present telephone services without written permission previously secured from the LICENSOR. LICENSOR reserves the right to terminate telephone services within fifteen (15) days written notice to the LICENSEE, at the address stated above, if and when such telephone services might be needed for any reason by LICENSOR and, in particular, to provide for a monitoring system at the Station.

8. When and if LICENSOR should make available to LICENSEE an emergency generator and/or a portable fire pump, LICENSEE agrees to accept such items and to maintain them in their then present condition. LICENSOR assumes no obligation hereby to provide such items to LICENSEE and/or to provide emergency power or water services to the LICENSEE.

9. LICENSEE is hereby given the right to pass over such other portions of the Station as might be necessary in order to fulfill the terms and conditions of this License. However, the foregoing notwithstanding, LICENSEE, may not, for any reason, enter upon that portion of the premises marked in green on Schedule A attached hereto and fenced by LICENSOR as the location of the Light and associated equipment of the Station. LICENSEE, further, may not place additional improvements or personal property of the LICENSEE or any other person or corporation on any portion of the Station other than the Licensed premises nor make alterations or additions to the existing improvements or structures, except as is necessary to comply with the terms and conditions foregoing of this License or except as may be permitted in writing, previously secured, by the LICENSOR. No person shall be allowed on any other portion of the Station by the LICENSEE except for the purposes specifically set forth in this License.

10. LICENSEE hereby agrees that in addition to any other term and condition of this License, to report to LICENSOR, Commander, First Coast Guard District, 150 Causeway Street, Boston, Massachusetts 02114, any fire, vandalism, deterioration and/or damage from any and all causes which might occur at the Station. LICENSEE by agreeing hereto does not become, nor does any of its employees become, an employee or agent of LICENSOR. LICENSEE further agrees to immediately notify LICENSOR in the event that such caretaker should discover an

BILPS0505

outage at the Light located at the Station. LICENSEE hereby, does not become an employee or agent of LICENSOR and shall not be held liable by LICENSOR for any failure of LICENSEE to notify LICENSOR of any outage at the Station.

11. LICENSEE shall maintain insurance on the premises as follows:

| Fire damage, vandalism, etc. | $50,000.00 |
| Personal Liability | $250,000.00 |

*Already Taken care of –*

12. No admission fees or other charges shall be levied on the public in the use of the licensed premises unless and until permission for the imposition of such admission fees or other charges shall have been secured in writing from the Commander (flp), First Coast Guard District, Boston, Massachusetts 02114. In the event admission fees or other charges to be levied on the use of the licensed premises are permitted by the Commander, First Coast Guard District, a certified statement, showing in detail the operating expenses incurred and revenues received in connection with the use of the licensed premises, shall be submitted prior to or on the First day of October of the calendar year following the calendar year in which admission fees or other charges are levied in connection with the use of the licensed premises. At that time the LICENSEE shall pay to the LICENSOR an amount equal to the revenues from admission fees or other charges levied on the public in the use of the premises in excess of the expenses of the LICENSEE in maintaining the premises as required.

13. The LICENSEE shall not store any materials nor conduct any operations in any area belonging to the LICENSOR, other than on the premises, except as herein permitted or as otherwise authorized in writing by the LICENSOR.

14. The LICENSEE agrees that any and all improvements made or to be made to the premises or the Station by either party shall as of the date of installation become a part of and remain with the assignees, or designees, upon the expiration, termination, or revocation of the License.

15. By the date of expiration of or upon termination or revocation of this License, the LICENSEE shall relinquish the use of the licensed premises in as good a condition and state or repair as when possession was received, any normal wear and tear excepted, and shall remove all personal property from the premises before the date of expiration, termination, or revocation, or within such reasonable time thereafter as LICENSOR may have prior to such date, in writing, specifically designated. If the LICENSEE should fail to remove any personal property by the date of expiration, termination, or revocation, as the LICENSOR might designate specifically in writing, all such property remaining, at the election of the LICENSOR, shall become the property of the LICENSOR or may be removed by the LICENSOR at the expense of the LICENSEE, and no claim for damages against the LICENSOR shall arise by or on account of such action. Further, the LICENSEE shall save the LICENSOR harmless from any claim by any person arising by or on account of such action by the LICENSOR.

16. LICENSEE hereby agrees that LICENSOR shall continue to have such rights to use the premises or property of the LICENSEE as existed on the date of execution hereof and that this License is subject to any other licenses, permits or rights given or granted by LICENSOR in regard to the premises and the station.

17. The LICENSEE shall not engage in any activity which shall in any manner interfere with the beam of the Bakers Island Light or which shall make said light as it presently is operated or as it may be operated in the future, less discernible as an aid to navigation, including the use of any lights, structure, building or activity which might cause confusion with or apparent dimunition of the beam of light.

18. LICENSEE acknowledges that the licensed premises is the platform for an automated aid to navigation, to wit: Bakers Island Light Station, and that said light is equipped with a fog signal which when activated produces a sound of sufficient decibel level to produce auditory damage to a person in close proximity to the signal. The LICENSEE assumes responsibility for all demands and liabilities whatsoever growing out of or arising from the exposure to said fog signal of any person except a member of the Coast Guard or person in its employ.

LEGAL OFFICE
FIRST COAST GUARD DISTRICT
BOSTON, MASSACHUSETTS

BILPS0506

## PART II

1.  The use and occupancy of the premises shall be without expense to the United States and shall be subject to such rules and regulations as the LICENSOR, or his duly authorized representative, may from time to time prescribe, as well as all applicable Federal, State or municipal laws, rules, orders, regulations, or requirements.

2.  The expense for all water, electricity and other utilities shall be paid by the LICENSEE and billing shall be made directly to the LICENSEE. LICENSEE shall save LICENSOR harmless from any and all claims arising from such utilities provided to the above premises.

3.  The LICENSEE shall assume all responsibility in keeping the above premises, and surrounding area, clean and free from waste and rubbish and in a presentable condition at all times.

4.  This License does not create, nor does the LICENSEE receive hereunder, any estate or permanent interest of whatever nature in the above premises. The LICENSOR makes no warranty or representation as to the state or title to the premises. The LICENSEE's occupation and use of the premises is subject to any claim by third parties who might hold an interest in the premises or a portion thereof. No claim for damages against the United States shall arise by or on account of any defect in the state of the title to the premises or an interest claimed in the premises by third parties.

5.  LICENSEE may use the premises as authorized herein; however, LICENSEE accepts this License with the full knowledge, understanding and agreement that any property stored or used by or with the consent of LICENSOR is subject to the risk of destruction or damage by fire or otherwise, or may be stolen, and agrees that the premises are to be used and enjoyed solely at the risk of the LICENSEE and that the United States shall not be responsible to the LICENSEE or any other person or corporation for any such loss, injury or damage, whether the same results from the negligence of the United States or otherwise.

6.  LICENSEE agrees to accept the use of the premises in their present condition and the LICENSOR makes no warranty for the condition of the premises. The LICENSOR does not, by reason of this License, assume any liability whatsoever for injury or damage to any person or property incident to or arising during the use, occupancy or enjoyment by the LICENSEE of the premises described herein.

7.  The LICENSEE shall at all times, save, protect and defend the United States, its officers and agents, against any and all claims, demands and liabilities whatsoever growing out of or arising from the use and occupancy of said premises, or incident to the fulfillment by the LICENSEE of the terms and conditions and all Parts of this License.

8.  The LICENSEE shall perform all work in a "workmanlike" manner and shall be responsible for any damage that may be caused to the above premises or to other property of the United States incident to the use and occupancy of said premises, and the LICENSEE shall properly repair or replace to the satisfaction of the LICENSOR any property damaged or destroyed, or, in lieu of such repair or replacement, LICENSEE shall, if required by LICENSOR, pay a sum of money sufficient in amount to compensate for the loss sustained by the United States.

9.  No use may be made of the above premises which is deemed objectionable to the LICENSOR, mars or impairs the appearance of said premises, interferes with the transaction of Government business and/or the convenience of the public, jeopardized the safety of persons or property, or causes justifiable public criticism, nor may additions to or alterations of the above premises be made without the written consent of the LICENSOR. The LICENSOR reserves the right to enter the above premises at any and all times for Coast Guard or other Government purposes, including, but not limited to, the purposes of inspection.

10. The LICENSEE shall exercise due diligence in the protection of property of the United States which may be located in or on the above premises against fire, vandalism, deterioration and damage from any and all causes, and shall

LEGAL OFFICE
FIRST COAST GUARD DISTRICT
BOSTON, MASSACHUSETTS

BILPS0507

immediately notify the Commander (flp), First Coast Guard District, 150 Causeway Street, Boston, Massachusetts 02114, at such times as damage to the above premises is noted. The LICENSEE is additionally requested to report all observed discrepancies in Aids to Navigation equipment to the Commander, First Coast Guard District, 150 Causeway Street, Boston, Massachusetts 02114, telephone number (617) 223-3632.

11. LICENSEE warrants that he has not employed any person to solicit or secure this License upon any agreement for a commission, percentage, brokerage or contingent fee.

12. Neither this License nor any part thereof shall be conveyed, sub-licensed, or otherwise transferred by the LICENSEE and the LICENSEE shall not allow any other person or organization to enjoy the benefits or rights thereof.

13. No member of or delegate to the Congress or Resident Commissioner shall be admitted to any share or part of this License, or to the benefits arising therefrom.

14. The LICENSEE, for himself, his personal representatives, successors and interests, and assigns, as a part of the consideration hereof, and as a term and condition of this License, does hereby covenant and agree that (1) no person on the grounds of race, color, or national origin shall be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination in the use of said facilities, (2) that in the construction of any improvements on, over or under such land and the furnishing of services thereon, no person on the ground of race, color, or national origin shall be excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination, (3) that the LICENSEE shall use the premises in compliance with all other requirements imposed by or pursuant to Title 49, Code of Federal Regulations, Department of Transportation, (a) Office of the Secretary, Part 21, Nondiscrimination in Federally-assisted programs of the Department of Transportation Effectuation of Title VI of the Civil Rights Act of 1964, and as said regulation may be amended.

In the event of breach of any of the terms, conditions, or convenants of this standard Department of Transportation Title VI Assurances, the United States shall have the right to terminate the License and re-posses said land and the facilities thereon, and hold the same as if said License had never been made or issued.

15. LICENSEE hereby agrees that this Revocable License creates in LICENSEE no rights for relocation assistance or other payments under the "Uniform Relocations Assistance and Real Property Acquisition Policies Act of 1970", PL 91-646.

Dated this ___H.S.D___ day of ___march___ 1980.

UNITED STATES OF AMERICA, ACTING BY AND THROUGH THE UNITED STATES COAST GUARD BY:

___D. Jeanne Otto___
Signature

J. P. DRISCOLL
Typed Name

Chief, Logistics and Property Branch
Title

BILPS0508

# MAJOR BIBLIOGRAPHICAL REFERENCES

Famous New England Lighthouses by Edward Rowe Snow

**EXHIBIT**

"G"

# GEOGRAPHICAL DATA

ACREAGE OF NOMINATED PROPERTY 11.5 Acres +-

UTM REFERENCES

| | ZONE | EASTING | NORTHING | | ZONE | EASTING | NORTHING |
|---|---|---|---|---|---|---|---|
| A | 19 | 3 53 00 0 | 4 71 0 500 | B | 19 | 35 3 00 0 | 4 71 10 00 |
| C | 19 | 3 53 90 0 | 4 71 0 500 | D | | | |

VERBAL BOUNDARY DESCRIPTION

Beginning at the most southerly point of the parcel to be des-
cribed at an Iron Bolt in a large rock on the northeast side
of a pond;  thence N 85°-10'-30" W by land N/F Henry W. Morse
et, ux. 670 feet, more or less, to the mean high water line of
Massachusetts Bay;  thence northerly, easterly and south easterly

LIST ALL STATES AND COUNTIES FOR PROPERTIES OVERLAPPING STATE OR COUNTY BOUNDARIES

| STATE | CODE | COUNTY | CODE |
|---|---|---|---|
| STATE | CODE | COUNTY | CODE |

# FORM PREPARED BY

NAME / TITLE

Michael F. Flaherty

ORGANIZATION

First Coast Guard District

STREET & NUMBER

150 Causeway Street

CITY OR TOWN

Boston

DATE

3/31/76

TELEPHONE

STATE

Massachusetts

# CERTIFICATION OF NOMINATION

STATE HISTORIC PRESERVATION OFFICER RECOMMENDATION

YES_____        NO_____        NONE_____

STATE HISTORIC PRESERVATION OFFICER SIGNATURE

In compliance with Executive Order 11593, I hereby nominate this property to the National Register, certifying that the State
Historic Preservation Officer has been allowed 90 days in which to present the nomination to the State Review Board and to
evaluate its significance. The evaluated level of significance is _____National _____State _____Local

FEDERAL REPRESENTATIVE SIGNATURE

TITLE

DATE

FOR NPS USE ONLY

I HEREBY CERTIFY THAT THIS PROPERTY IS INCLUDED IN THE NATIONAL REGISTER

DATE

DIRECTOR, OFFICE OF ARCHEOLOGY AND HISTORIC PRESERVATION

ATTEST:

DATE

KEEPER OF THE NATIONAL REGISTER

BILPS0509

Form No 10-300a
(Rev 10-74)

UNITED STATES DEPARTMENT OF THE INTERIOR
NATIONAL PARK SERVICE

# NATIONAL REGISTER OF HISTORIC PLACES
## INVENTORY -- NOMINATION FORM

FOR NPS USE ONLY

RECEIVED

DATE ENTERED

CONTINUATION SHEET                ITEM NUMBER    10      PAGE    2

by the mean high water line of Massachusetts Bay to a point
on the mean high water line bearing N 38°-57'-30" E from
said point of beginning; thence S 38°-57'-30" W by land N/F
Henry W. Morse 600 feet, more or less, to the point first
mentioned and point of beginning.

**BILPS0510**



*1923*

## ATTORNEY'S REPORT OF TITLE

Baker's Island Light Station, Manchester, Essex County, Massachusetts

I hereby certify that I have examined the Real Estate Records of the Office of the Commander, First Coast Guard District, Boston, Massachusetts, and on the basis of such examination I conclude that title to the lands described in Schedule "A" attached hereto was vested in fee simple of record in the United States of America on the first Tuesday of October, A.D. 1797, <u>by</u> award of the Court of General Sessions of the Peace, begun and holden at Newburyport, within and for the County of Essex, Massachusetts, recorded on pages 39 and 53 of record book entitled "Sessions Records July 1796 March 1803". A brief history of this award is contained in Schedule "A" with the description of the premises.

Fee simple title continued in the United States up to February 18, 1901, when a portion of the premises described in Schedule "A" was conveyed by the United States to Henry W. Morse. The portion conveyed is described in Schedule "B". In return, Henry W. Morse, by Quitclaim deed executed on March 14, 1901, conveyed the premises described in Schedule "C" to the United States of America. In that same deed Rebecca H. Morse, widow of Nathan R. Morse, released to the United States all dower and homestead rights in the premises. The deed from Henry W. Morse to the United States was recorded at Salem, Massachusetts, May 15, 1916, in Essex Southern Deeds, Book 2329, page 134. Fee simple title to the premises described in Schedule "A", less those described in Schedule "B", and fee simple title to the premises described in Schedule "C", has continued in the United States up to and including the date of my examination free and clear of all encumbrances, defects or interests impairing or adversely affecting the title to said property, except for the following:

1. Subject to any state of facts which may be disclosed by a physical examination of the premises described in Schedules "A", "B" and "C".

2. Subject to any state of facts an accurate and adequate survey of the premises described in Schedules "A", "B" and "C" may disclose.

BILPS0511

3. Subject to existing easements for pulbic roads and highways, for public utilities, for pipelines and for drainage and sewer lines of the premises described in Schedules "A", "B" and "C", if any.

4. With regard to those premises described in Schedule "C" which were obtained by Quitclaim deed from Henry W. Morse and Rebecca H. Morse in 1901, subject to any incumbrances, defects or interests impairing or adversely affecting the title of said property not warranted against by said Quitclaim deed.

L. KENT WALTON
Lieutenant, U. S. Coast Guard Reserve
Law Specialist

Dated: 26 Oct. 1973

2

BILPS0512

SCHEDULE "A"

Baker's Island Light Station, Manchester, Essex County, Massachusetts

Briefly, the history of the original ten acres obtained by the Lighthouse Service is as follows:

On April 1, 1793, Oliver Wendell, executor for the estate of John Erving, conveyed to George William Erving all of Bakers Island by deed containing a covenant that the executor was "lawfully seized in fee of the premises." June 18, 1796, jurisdiction of an undesignated tract of land on Bakers Island not to exceed ten acres, was ceded to the United States for the purpose of establishing a lighthouse thereon. Further, this Act of Cession of Jurisdiction of the Legislature of Massachusetts provided that the United States could "purchase or take" such a tract of land as was necessary for the lighthouse. In addition, it made provision for an arbitration-type procedure should the United States and the owner of the property be unable to agree on the sale and purchase of such a tract. The procedure was for the court of general sessions of the peace for the appropriate county to appoint a committee of three who would "view, set off and appraise such tract . . . of land; and shall make return of their doings to the same court", so that upon acceptance of the award and return by the court in payment of the appraised value title would be vested in the United States.

The United States and the attorney for George William Erving, owner of Baker's Island, were unable to agree upon the purchase and sale of the ten acre tract of land which the United States found necessary for the lighthouse. As a result, in accordance with the Act of Cession of Jurisdiction of the Massachusetts Legislature, the Court of General Sessions of the Peace for the County of Essex on the second Tuesday of July, 1797, appointed a committee of three "to view, set off, and appraise any tract . . . of land not exceeding ten acres on Baker's Island, ceded to the United States by the Commonwealth of Massachusetts for the purpose of erecting a lighthouse thereon and necessary and convenient for the same, and to determine on a just equivalent to the owner . . . of such tract." The committee, by report dated September 12, 1797, appraised the ten acres below described at the sum of $500.00 and awarded that

*where?/when?*

sum to the owner) of the land which award and return
was accepted by the Court of General Sessions of
the Peace for the County of Essex on the first Tuesday
of October, 1797.  This constituted the ten acre
parcel which the United States owned until 1901 when
the portion described in Schedule "B" was conveyed
to Henry W. Morse.

The ten acre tract referred to above, situated on Baker's
Island, Manchester, Essex County, Maine, is described
in the "award and return" accepted by the Court of General
Sessions of the Peace for the County of Essex, as follows:

Beginning at the great rock on the northerly side
of the pond and from thence running north 73 deg.
05' W. 39 poles and 10 links to the sea bounding
southerly by the other part of said island, from
thence running N. 11 deg. 50' East 11 poles and 4
links and thence north 29 deg. 30' east 15 poles
11 links; thence N. 79 deg. 20' E. 11 poles and 10
links; thence north 88 deg. E. 24 poles and 5 links;
thence S. 44 deg. E. 23 poles and 6 links, and on
all those courses last mentioned bounding upon the
sea; thence running S. 46 deg. W. 32 poles and 10
links to the bound first mentioned containing within
those lines 10 acres.

Poles and links referred to herein translate as follows:

39 poles 10 links = 650'
11 poles 4 links = 184.1'
15 poles 11 links = 254.5'
11 poles 10 links = 188'
24 poles 5 links = 399'
23 poles 6 links = 383.5'
32 poles 10 links = 554.6'

2

BILPS0514

SCHEDULE "B"

Baker's Island Light Station, Manchester, Essex County, Massachusetts

Real Property situated on Baker's Island, Manchester, Essex County, Massachusetts described in the deed of conveyance from the United States of America to Henry W. Morse, as follows:

Beginning at the most southerly point of the boundary line of the land belonging to said United States at said Baker Island, at a point marked by a square stone post, cut with the letters U.S. L-H E; thence running north thirty-eight degrees, fifty-seven minutes and thirty seconds East (N 38° 57' 30" E) six hundred and fifty (650) feet, more or less, to the line of mean low water; thence Northwesterly by mean low water to a point on said mean low water line bearing North thirty-five degrees, thirty nine minutes and thirty seconds East (N 35° 39' 30" E) from the said point of beginning; thence running South thirty-five degrees, thirty-nine minutes and thirty seconds West (S 35° 39' 30" W) six hundred and forty-two (642) feet, more or less, to the point of beginning, containing twelve thousand one hundred and sixty (12,160) square feet, more or less; being a portion of the premises described in the report of a committee to view, set off and appraise land on Baker Island so-called, ceded to the United States of America by the Commonwealth of Massachusetts for the purpose of erecting a lighthouse thereon, made to the Court of General Sessions of the Peace begun and holden at Newburyport within and for the County of Essex on the first Tuesday of October A.D. 1797.  Recorded on pages 39 and 53 from record book entitled "Sessions Records July 1796, March 1803."

BILPS0515

SCHEDULE "C"

Baker's Island Light Station, Manchester, Essex County, Massachusetts

Real Property situated on Baker's Island, Manchester, Essex County, Massachusetts described in the Quitclaim deed from Henry W. Morse and Rebecca H. Morse to the United States of America, as follows:

A certain parcel of land situate on Baker Island at the entrance of Salem Harbor in said Commonwealth of Massachusetts, bounded and described as follows: Beginning at the most southerly point of the boundary line of the land belonging to said United States at said Baker Island, at a point marked by a square stone post, cut with the letters U.S. L-H E: thence running north eighty-two degrees, seven minutes and thirty seconds west (N 82° 07' 30" W) along the southern boundary line of the land belonging to the said United States, six hundred and eighty-nine (689) feet, more or less, to the line of mean low water; thence southerly by mean low water to a point on mean low water line bearing north eighty-five degrees ten minutes and thirty seconds west (N 85 10 30" W) from the said point of beginning; thence running south eighty-five degrees, ten minutes and thirty seconds east (S 85° 10' 30" E) seven hundred and ten (710) feet, more or less, to the point of beginning, containing thirteen thousand one hundred and thirty-five (13,135) square feet, more or less, Being a part of the premises conveyed to the said Henry W. Morse by deed from Nathan R. Morse dated March 25, 1897 and recorded in Essex Reg. of Deeds, So. District Book 1505, Leaf 580.

BILPS0516