UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BAKER'S ISLAND LIGHTHOUSE PRESERVATION SOCIETY, INC. And ROBERT LEAVENS<br>　　　　　　Plaintiffs,<br>v.<br><br>UNITED STATES DEPARTMENT OF INTERIOR, SECRETARY OF THE INTERIOR, NATIONAL PARK SERVICE, DIRECTOR NATIONAL PARK SERVICE, CRAIG MANSON, As He Is Assistant Secretary Of Fish, Wildlife And Parks, JANET SNYDER MATTHEWS, As She Is Associate Director, Cultural Resources, National Park Service, BRIAN SWEATLAND, As He Is Special Assistant to the Office Of The Director, National Park Service, ADMINISTRATOR OF GENERAL SERVICES, GENERAL SERVICES ADMINISTRATION, and JOHN KELLY, As He is Acting Director of Property Disposal, General Services Administration<br>　　　　　　Defendants | C.A. No. 05-10855 PBS |

**PLAINTIFFS' REPLY MEMORANDUM**

Catherine J. Savoie, BBO# 544599
Ian H. Moss, BBO# 658557
Posternak, Blankstein & Lund, LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-8004
(617) 973 6100

I.    **INTRODUCTION**

The defendants' opposition to Baker's Island Lighthouse Preservation Society, Inc.'s (the "Society") and Robert Leavens' ("Leavens") motion, while eloquent, is fundamentally flawed. Riddled with errors, misstatements of fact and erroneous assumptions of law, the defendants' opposition attempts, through a panoply of defenses, to protect their underlying decision to convey Baker's Island Lighthouse to the Essex National Heritage Commission ("Commission").

The defendants' opposition, however, misses its mark. The Society, having raised a series of claims supported by extensive evidence, has demonstrated not only arbitrary and capricious review and decision-making by the defendants but also that they acted in bad faith – motivated by the desire to ensure that their pre-selected candidate would receive Baker's Island Light. All of the Society's claims are cognizable under the Administrative Procedures Act ("APA") and warrant this Court's reversal of the agency's decisions. In addition, the claims raised by The Society reveal a series of flagrant legal errors, including failures to follow statutory mandates and to recognize that the pre-selected candidate was ineligible under the National Historic Lighthouse Preservation Act ("NHLPA")and the Omnibus Parks and Public Land Management Act of 1996 ("Omnibus Act"). These errors must be reviewed, *de novo*, by this Court.

Despite the defendants' insistence, none of these claims have been waived. Although the Society did not raise these claims during the administrative appeal this was because they were not known at that time. Indeed, the basis for these various claims only became apparent as a result of the painstaking efforts of the

1

Society to obtain information from the defendants using Freedom of Information Act Requests ("FOIA"). These requests were ongoing before, during, and after the administrative appeal.

The defendants' efforts to restrict this Court's review only to the cleansed administrative record that they compiled must also be denied. Because the Society has raised, and adequately supported, allegations of bad faith and legal errors, review of an expanded record by this Court is necessary. The affidavits of Ms. Elizabeth Ware, Mr. Robert Leavens, and Mr. Hallowell all provide important testimony concerning the defendants' bad faith and their arbitrary and capricious actions. In addition, the materials and documents, many of which should have been included in the administrative record in the first instance, all provide insight into the underlying agency actions.

Finally, the defendants renew their request to dismiss certain defendants. This request has been previously denied and must also fail here because the Society has challenged both the final decision and the preliminary proceedings.

## III.   ARGUMENT

### A.   THE DEFENDANTS' CONSOLIDATED MEMORANDUM IS REPLETE WITH MISCHARACTERIZATIONS, MISTATEMENTS OF FACTS AND ERRORS OF LAW

These include:

- The defendants unfairly characterize the Society's application as being one of exclusion rather than that of inclusion. See Def. Opp. P.8. In support of this mischaracterization, the defendants contort the Society's cautious approach towards public access and turn it against the Society. However, it has never been

2

the Society's intention to exclude public access. Rather, the Society's application sought to carefully introduce safe public access while balancing the interests of the island residents and addressing fire safety.

- Similarly, the defendants misconstrue, as exclusionary, the fact that the Society's application described many of the challenges facing the development of Baker's Island Light. In actuality, however, the Society's application simply reflected the superior knowledge of its members, many of whom are long-established residents of the island and intimately familiar with Baker's Island Light, and the unique challenges that its development presents.

- Similarly, the defendants have ignored that Congress specifically addressed the issue of safe public access in the text of the NHLPA statute and they have further chosen to ignore the many errors and inadequacies of the Commission's application in this regard.

- Contrary to the defendants' assertions in their opposition, the Commission has no history of preservation projects in a marine environment, lacks the necessary financial resources (having repeatedly failed to meet the mandated match of approximately $900,000 to $1,000,000 of federal funds), has operated in the red for many years, and has zero experience with property ownership.

- The defendants adopt an erroneous construction of the language in the Commission's enabling legislation ignoring that the Commission has no jurisdiction over Baker's Island nor the authority to own property.

- The defendants have failed to adequately explain their flagrant violation of the NHLPA statute by failing to promulgate the required policies and procedures.

3

- The defendants completely fail to address the fact that they have previously admitted that written policies and procedures were required having drafted a handbook some three years beyond the statutory deadline. Likewise, the National Park Service ("NPS") and General Services Administration ("GSA") noted this problem in April 2005 during the Lighthouse Conference, explaining that the lack of policies and procedures were the result of the various agencies being unable to get along.

- The defendants ignore the fact that the reservation of extensive property and use rights in favor of the United States Coast Guard contradicts the predicate of NHLPA that the property be "excess" as defined by 40 USC 102(3). This statute states that excess property is that which the federal agency determines is not required to meet the agency's needs or responsibilities. Ironically, the defendants themselves commented on this dichotomy within the NHLPA statute at the April 2005 Lighthouse Conference – a fact that they now conveniently ignore.

- The defendants' statement that the Society's application was incomplete is erroneous. In reality, J. Perunko, an employee of the defendants, admitted that it was she who was responsible for failing to distribute the entire version of the Society's application to the review committee.

- The defendants' allegation that the United States obtained title by award of the Court of the General Sessions of the Peace on the 1st Tuesday of October 1997 is categorically false. This record only indicates that the Court accepted the

4

appraisal. It does not show that the payment was made or the land transferred. No

deed was recorded.

•    The defendants argue that NHLPA only requires that the defendants

convey quitclaim title. While this is correct, the Society has argued in its motion

that the defendants, in fact, have absolutely no title. It is axiomatic that the

defendants cannot convey something they do not have.

•    The defendants erroneously state that the Society was a licensee of the U.S

Coast Guard.

•    The characterization that Ms. Elizabeth Ware had engaged in a campaign

to disqualify the Commission is unfair and not supported by the record. Ms. Ware

was a retained preservation consultant seeking information on behalf of the

Society.

•    Finally, the defendants' statement that the Commission did not propose to

engage in any form of construction project is inaccurate. The Commission

proposed over $150,000 of renovation work – activities that would have required

a building permit authorized by the relevant local building department.

A.    **BECAUSE THE SOCIETY HAS DEMONSTRATED THAT THE
DEFENDANTS' ACTIONS AND DECISIONS WERE ARBITRARY
AND CAPRICIOUS, MOTIVATED BY BAD FAITH, AND
LEGALLY FLAWED – JUDICIAL REVIEW BY THIS COURT IS
NECESSARY**

In stark contrast to the defendants' opposition, the Society has raised

numerous examples of the legal errors committed by the defendants in the

underlying agency action. In addition to creating a cognizable claim under the

APA, these legal questions warrant *de novo* review by this Court. Fergiste v.

5

I.N.S., 138 F.3d 14 (C.A.1, 1997). See also Howard v. F.A.A., 17 F.3d 1213, 1215

(C.A.9, 1994) citing Janka v. Department of Transportation, 925 F.2d 1147, 1149

(9th Cir.1991). See also 5 USC §706(F). An agency decision can be set aside if

the decision was "arbitrary, capricious, an abuse of discretion or otherwise not in

accordance with the law or if the action failed to meet statutory, procedural, or

constitutional requirements. See  Citizens to Preserve Overton Park v. Volpe, 401

U.S. 402, 414 (1971).

> i.     **The defendants committed legal error when they failed to**
>        **promulgate policies and procedures as mandated by NHLPA**

The most striking of defendants' legal errors is their failure to promulgate

and implement policies and procedures to select an eligible entity for the light

station and to monitor its subsequent use. It is well recognized that when an

agency has been commanded by statute to promulgate rules it must do so. See,

e.g., Pulido v. Heckler, 758 F.2d 503 (D. Colo, 10th cir. 1985). See also Puerto

Rico Sun Oil Co. v. U.S. E.P.A., 8 F.3d 73 (1 st Cir. 1993) (procedural corners

must be squarely turned). Failure to do so can lead to reversal of an agency's

decision. See Nelson v. INS., 232 F.3d 258, 262 (1st Cir. 2000)

The defendants, forced to concede that NHLPA expressly commanded

them to implement these policy and procedures no later than October 24, 2001,

now allege that the application materials submitted to the applicants contained all

the policies and procedures necessary to satisfy the statutory requirements. See

Def Opp., p. 20, fn 16. However, the record does not support this argument. On

their face the application materials do not state any policy or describe any

6

procedure. See, e.g., AR063-AR082. Congress did not intend the Society, the Commission, or any other future applicant, to be forced into reading between the lines so as to divine an agency's policy determinations.

Addressing the issue of safe public access was clearly an example of where a policy and procedure was required. For example, NHLPA requires that the "eligible entity make the historic light station available for education, park, recreation, cultural or historic preservation purposes for the general public at *reasonable times* and under *reasonable conditions*[.]"[12] See 16 U.S.C. 470w-7(c)(1)(E) (emphasis added). Despite this requirement, however, absolutely nothing in the application materials or the website addresses a policy or procedure for determining what is "reasonable access" and what are "reasonable conditions".

Lacking such policy or procedures the defendants were then free to engage in arbitrary review and cater to their own whims and biases when reviewing the applications. A review of the administrative record demonstrates this bias. For example, the Society's members, knowing that the Coast guard had stated that beach landings on Baker's Island are extremely dangerous, emphasized in its application its relationship with the Wharf Company and ability to gain access to the island safely via the only wharf on the island. This would avoid dangerous beach landings and allow wheelchair access. Incredulously, the agency, and now the defendants in their opposition, considered this an example of the Society being

---

[1] It is of note that the defendants misquote this section to read "[.] available for education,  park, recreation, cultural **AND** historic preservation purposes for the general public" See Def. Opp., P.22.
[2] The Use Plan required by the applications materials also emphasizes the requirement for safe access. See A.R. 0065.

7

"exclusionary" and penalized the Society's application. See Def. Opp., p. 8 fn 6.

In stark and telling contrast, however, although the agency had chastized the

Commission's for its overzealous access plans and inability to gain access to the

only wharf on the island, it ultimately turned a blind eye and selected the

Commission as the eligible entity. See Def. Opp., p. 9.

Nor do the application materials or website provide any form of policy or

procedure to direct the potential candidates concerning joint applications – and

confusion appears to have existed here also. The defendants argue in their brief

that that the light station could only be deeded to a single entity and deny that the

NPS was a co-applicant with the Commission. See Def. Opp., p33. However, the

Essex National Heritage Commission has **admitted completely the opposite**. See

Pntf Br., p. 13.

Similarly, as defendants admit, much of the Society's Freedom of

Information Requests were directed to obtaining information on the review and

appeal process. Even today, no policy or procedure can be found concerning the

review and appeal process and nothing was provided in the application materials.

See A.R. 063-082.

The defendants' argument that the Society had not been injured due to the

lack of these procedures strains all credibility. See Def. Opp. P.21. From the onset

of their initial request for administrative review, The Society has maintained that

the lack of mandated policies and procedures has allowed the defendants' free

reign to entertain their own biases and whim in the selection of their previously

chosen candidate. See Plnf Br., p. 19.

8

      **ii.    The defendants committed legal error when they failed to recognize that the Essex National Heritage Commission was not an eligible entity under NHLPA**

        **a.    The Jurisdiction of the Commission does not extend to Baker's Island**

The Congressional map, NAR 51-80,000, which delineates the boundaries of the jurisdiction of the Commission, does not include Baker's Island. See Def. Opp., Omnibus Act, §503(b).[3] In an attempt to circumvent this fundamental flaw the defendants make the unsupported allegation that the use of the term "lands *generally* depicted on the map" must mean that Congress intended the jurisdiction of the Commission to be coterminous with Essex County and thus include lands and property outside of the Congressionally drawn boundaries. See Def. Opp., Omnibus Act, §503(b) (emphasis added by defendants). Applying the defendants' own statutory construction argument, however, reveals the flaws in this allegation and demonstrates that the defendants seek to cull selected words and engage in an antiseptic analysis of a specific term and avoid examining the statute as a whole. See Def Opp. at p.16 citing Cablevision of Boston, Inc., v. Pub. Improvement Comm'n. Of the City of Boston, 184 F.3d 88, 101 (1st Cir. 1999). Had defendants examined the statute as a whole, they would discover that section 503(a) of the Omnibus Parks Act states that the jurisdiction of the Commission is limited to "*certain* historic and cultural lands, natural waterways, and structures within the County of Essex." See Def. Opp., Extracts of Omnibus Act, §503(a) . The use of

---

[3] It is of note that the defendants misstate that Baker's Island is included on the map within the Administrative Record. See A.R. 0358.

ID # 470415v04/14457-2/ 05.11.2006

the terms "certain" and "generally depicted" indicate a Congressional intent of limitation rather than the global inclusion that the defendants seek to infer.

Moreover, had Congress intended the jurisdiction of the Commission to be coterminous with the political boundaries of Essex County, it would have said so. Indeed, the record demonstrates that Congress had done just that in the very same act that created the Essex National Heritage Area. For example, a review of the extracted Omnibus Act attached to defendants' opposition reveals that Congress described the boundaries of some, but not all, of the heritage areas using express reference to political county boundaries. See, e.g., Def. Opp., Omnibus Act, §403(b) (enabling legislation for Steel Industry American Heritage Area, "BOUNDARIES – The Heritage Area shall be comprised of the counties of Alleghany, Armstrong, Beaver, .. [.]"); §904(b)(1) (enabling legislation for Hudson River Valley Heritage Area, BOUNDARIES – [.] the Heritage Area shall be comprised of the Counties of Albany, Rensselaer, Columbia.. [.]")

In the instance of the Commission's jurisdiction, however, Congress did not use a broad and unambiguous reference to the political boundaries of Essex County, choosing instead to draft an entirely new map of the Commission's jurisdiction and including explicit language of limitation.  See, e.g., Def. Opp., Omnibus Act, §503(b) (enabling legislation of the Essex National Heritage Area,

10

BOUNDARIES – The area shall comprise of the lands generally depicted on the map numbered NAR-51-80,000 [.]").[4] [5]

### b. The Commission does not have the authority to own property or engage in construction projects

The defendants argue in their opposition that the lack of any prohibition in the use of federal funds in the enabling legislation of the Commission demonstrates that Congress intended the Commission own property. See Def. Opp., pp. 15-19.  In support, they point to other heritage management entities that were enabled by the same Omnibus Act that *did contain* such express prohibitions. Id.

However, these entities are distinguishable from the Commission. In each instance that Congress included a prohibition, it is evident that the management entity was also required to implement direct plans for *restoration and construction projects*. See Def. Opp., Omnibus Act, §405(3), §808(a)(2)(C) , and §906 (emphasis added). In such instances, ownership of property and the use of funds for construction and renovation were clearly anticipated by Congress – and hence controlling language was necessary. In the case of the Commission, however, the Omnibus Act only required that the Commission simply "*assist units of government and others*" in restoring historic buildings. No direct acquisition or

---

[4] A comparison of the map used by Congress in defining the boundaries of the Commissions' jurisdiction and that of the Essex County political map attached to the affidavit of Robert Leavens reveals numerous differences. See Second Affidavit of Robert Leavens, ¶¶1-3, Exhibit A filed with this Reply Memorandum.
[5] It is of note that Fran Mainella, director of NPS, informed Ms. Ware that the NAR-51-80,000 map was the "final map" of the Essex National Heritage Area.

11

ownership was therefore anticipated and hence no controlling language was

necessary. See Def. Opp., Omnibus Act, §504(2)(F) (emphasis added).[6]

iii.     **By attempting to convey the property using NHLPA but retaining significant easements and use rights in favor of the United States Coast Guard, the defendants violate the NHLPA statute**

The defendants allege that, because the NHLPA statute specifically allows

the defendants to reserve easements rights and to continue to use the property,

they can ignore the statute's predicate that the property must be considered

"excess" pursuant to 40 U.S.C. 102(3). See 16 U.S.C. §470w-7(b)(2). See Def.

Opp., p.27. By incorporating this statute into the NHLPA statute, "excess"

property is  defined under NHLPA to mean "property under the control of a

federal agency that the head of the agency determines is not required to meet the

agency's needs or responsibilities". See 40 U.S.C. 102(3). By retaining extensive

easements and reserving the right for the United States Coast Guard to alter the

property as necessary – Baker's Island Light Station cannot be considered

"excess" to the needs of the Coast Guard - a federal agency. The defendants'

impermissibly assume that the NHLPA statute must amend or modify the terms of

this statute.

---

[6] In addition, the argument must also fail as the Commission has previously *admitted* in its Management Plan that it is prohibited from using federal funds to acquire real property. See Plnf Br. Vol II, p. 4; AR0349; AR0399.

**B.**     **BAKER'S ISLAND LIGHTHOUSE PRESERVATION SOCIETY, INC., HAS NOT WAIVED THE ARGUMENTS RAISED IN ITS BRIEF**

The defendants argue that the various claims raised by the Society in its memorandum have been waived because these claims were not submitted to the agency during the underlying administrative process now being challenged. On the contrary, Courts within this circuit have consistently found that a waiver occurs only "when there is an intentional or voluntary relinquishment of a known legal right." Harvard Pilgrim v. Thompson, 318 F. Supp. 2d 1, 11 (D. R.I. 2004) citing Doyle v. Huntress, Inc., 301 F. Supp. 2d. 135, 149 (D. R.I. 2004) (quoting Black's Law Dictionary, 1580 (6th ed.1990)). See also Irons v. Federal Bureau of Investigation, 880 F.2d 1446, 1452 (1st Cir.1989).

In the instant case, the Society's memorandum demonstrates that it was not feasible for it to raise these claims at the administrative appeal because the grounds and basis of the claims were not known at that time. See Plnf Br., p. 9. For example, the extent of the defendants' utter failure to implement the policy or procedures mandated by NHLPA only became apparent, at the earliest, during the administrative appeal stage. See Plnf Br., p. 9., p. 17 This knowledge was only obtained when the Society and its retained consultant, Ms. Elizabeth Ware, communicated with the defendants and filed numerous and repeated FOIA requests during the administrative appeal period. The Society sought this information to both obtain a yardstick by which to measure the agency's actions towards the two applications, and to add support to their contention that its application had been treated arbitrarily and capriciously. See Plnf Br., p. 19. In

13

addition, absolutely no information on any appeal procedure had been previously provided to the applicants and The Society also sought this information through FOIA requests.

It was only in November 2004, *four months after their request for administrative review* had been filed that members of the Society learned the extent of the defendants' failures to promulgate the necessary policies and procedures. Subsequently, in April 2005 during the Lighthouse Conference and *nine months after the administrative appeal* had been filed, members of the Society learned, for the first time, that the lack of procedures was well recognized by the government and due to the inability of the various agencies to "get along." It was also at the Lighthouse Conference that members of the Society first learned of the defendants' knowledge of the dichotomy concerning the "excessing" requirement of NHLPA and the continued federal agency use of the property. See Plnf Br., p. 18.

C.  **BECAUSE THE SOCIETY HAS ADEQUATELY RAISED CLAIMS OF BIAS, BAD FAITH AND THE COMMISSION OF LEGAL ERRORS BY THE DEFENDANT – EXPANSION OF THE ADMINISTRATIVE RECORD IS NECESSARY**

The defendants' misguided attempt to redefine the administrative record as comprising solely of those documents and materials that the government is willing to produce to the exclusion of those that they wish to keep closeted from judicial scrutiny simply cannot stand. Rather, this Circuit has defined an administrative record to be "that which was before the agency at the time of the decision being reviewed was made, and it consists of all documents and materials directly or

14

indirectly considered by agency decision makers and includes evidence contrary to the agency's position." Town of Norfolk and Walpole, 137 F.R.D. at 185 citing National Wildlife Fed'n v. Burford, 766 F. Supp. 1445 (D. Mont. 1985). Thus, this Court has discretion to consider materials and documents outside of the administrative record. See Olsen v. United States, 414 F.3d. 144, 155 (1st Cir. 2005). "[T]he fact that review sometimes or often focuses on the initial administrative record does not mean it must, or always, will do so." Strahan v. Linnon, 966 F.Supp 111, 114 (D. Mass 1997) citing Valley Citizens for a Safe Environment v. Aldridge, 886 F.2d 458, 460 (1st Cir. 1989).

For example, when "a plaintiff specifically alleges bad faith and provides a reasonable factual basis for that contention" enlargement of the record is appropriate. Strahan, 966 F. Supp at 114 citing Apex Construction Co., Inc. v. United States, 719 F. Supp. 1144, 1147 (D. Mass. 1989). See also Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 420 (1971). Courts have also "recognized an exception when evidence either confirming or denying agency predictions made in the original decision subsequently becomes available." Strahan, 966 F. Supp at 114 citing Conservation Law Foundation of New England, Inc. v. Clark, 590 F. Supp. 1467, 1475 (D.Mass.1984). In addition, courts may consider extra-record evidence "to show factors that the agency should have considered, but did not." Id. Courts may also consider evidence outside the original agency record "to explain an unclear or technical record." Id. See also Valley Citizens for a Safe Environment, 886 F.2d at 460 ("a reviewing court

15

might want additional testimony by experts, simply to help it understand matters in the agency record."). <u>See also Harvard Pilgrim</u>, 318 F. Supp. 2d. at 9.

As the Society has elaborated in its motion, all of these criteria have been met. The Ware, Leavens and Hallowell affidavits along with the attached materials and documents provide a reasoned and supported factual basis that the government acted in bad faith, during the preliminary agency action, in the application process, during the decision-making, and during the administrative appeal. <u>See Plnf Br</u>. Vol I, pp. 16-18; Vol II, pp. 11-13.

In stark contrast to the defendants' characterization in their opposition, these are not mere allegations of impropriety but solid evidence in support of the Society's contention that the defendants engaged in bad faith. <u>Contrast to Apex Construction Co.</u>, 719 F. Supp. at 1147 <u>citing Environmental Defense Fund, Inc., v. Blum</u>, 458 F. Supp. 650, 663 D.DC. (1978). The affidavits also reveal that the Essex National Heritage Commission was not an eligible entity under the NHLPA process – a fact that clearly contradicts the agency's initial decision. <u>See Plnf Br</u>. Vol II, pp. 2-4; Vol II. pp. 10-13. Further, the affidavits reveal glaring errors and failures of the Commission's application, including failures to address key NHLPA concerns such as safe public access. <u>See Plnf Br</u>. Vol I, pp. 14-16. Even taken in the light most favorable to the government, these affidavits and documents demonstrate that these errors were not considered by the agency. <u>Id</u>.

If this Court allows the record to be expanded it will have sufficient evidence upon which to engage upon a review of all the Society's claims. As such, it is not necessary for this Court to remand to the administrative agency for

16

additional review and development of the record. Contrast Fla Power & Light Co. v. Lorion, 470 US 729, 744 (1985) (when a reviewing Court is *unable* to evaluate the challenged agency action based on the record before it, remand to the agency for investigation or explanation is necessary) (emphasis added).

E.    **THE GSA AND THE NAMED GSA OFFICIALS SHOULD NOT BE DISMISSED FROM THIS ACTION**

Seemingly undeterred by this Court's previous denial of its motion, the defendants again seek to have dismissed those defendants whom they erroneously claim to be unnecessary defendants. See Dfnt Opp., p. 33-34. Again, this reheated request must be denied. According to the plain language of the Administrative Procedures Act, once the threshold of "final agency action" has been met, then "preliminary, procedural or intermediate agency action" *is also* reviewable.

> A preliminary, procedural, or intermediate agency action or ruling not directly    reviewable *is subject to review on the review of the final agency action.*

5 U.S.C. §704. (emphasis added).

The amended complaint makes absolutely clear that the Society is now seeking review of the GSA's inaction in failing to timely develop policies and procedures required by the National Historic Light House Preservation Act ("NHLPA").

It is clear by the plain language of the Act, as well as cases decided under the Act, that preliminary, procedural or intermediate agency action is subject to review when the Court is reviewing the final agency action. 5 U.S.C. §704. See U.S. Association of Importers of Textiles and Apparel  v. United States

17

Department of Commerce _ F.3d _2005 WL 1514248 (Fed. Cir. 2005) ("final agency action" is required before judicial review is appropriate. Other agency actions, such as "[a] preliminary, procedural or intermediate agency action or ruling" are "subject to review on the review of the final agency action."). See also Burns v. Director, Office of Worker's Compensation Programs, 441 F.3d 15555 (D.C. Cir., 1994); Bowen v. Massachusetts, 487 U.S. 879, 108 S. Ct. 2722 (1988) (explaining that "[t]he legislative material elucidating that seminal act [5 U.S.C. §704] manifests the congressional intention that it cover a broad spectrum of administrative actions, and this Court has echoed that theme by noting that the Administrative Procedure Act's generous review provisions must be given a hospitable interpretation.")

## IV.    CONCLUSION

The Society has pointed to a series of legal failings, arbitrary reviews and decisions, and actions motivated by bad faith – all cognizable claims under the Administrative Procedures Act and appropriate for review by this Court. Contrary to the defendants' allegations, these claims have not been waived as they were unknown until, at the earliest, the administrative appeal stage.

The defendants are absolutely correct – that the Society is extremely disappointed that they did not receive Baker's Island Lightstation. Its dissapointment stems from the numerous legal errors, the complete lack of policies and procedures, the arbritrary actions, and the continuous undercurrent of bad faith exhibited by the defendants in favor of the pre-selected candidate. It is clear that Mr. Manson's statement that, "for the first time, non-profit entities are

18

on equal footing with federal agencies and other public bodies to obtain historic

lighthouse properties", was simply not true.

> **BAKER'S ISLAND LIGHTHOUSE**
> **PRESERVATION SOCIETY, INC.**
> **AND ROBERT LEAVENS**
> By their attorney,
>
> /s/Catherine Savoie
> Catherine Savoie, BBO #544599
> Ian Moss, BBO #658557
> POSTERNAK, BLANKSTEIN & LUND, L.L.P.
> The Prudential Tower
> 800 Boylston Street
> Boston, MA  02199
> (617) 973-6100

ID # 470415v04/14457-2/ 05.11.2006