IN THE DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BAKER'S ISLAND LIGHTHOUSE PRESERVATION SOCIETY, INC., and ROBERT LEAVENS, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No.: 05-10855-PBS |
| v. | ) ) | |
| UNITED STATES DEPARTMENT OF INTERIOR, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' SURREPLY**

Plaintiffs' Reply Memorandum does not make their case any more than their principal brief did. It reveals a fundamental misunderstanding of administrative law, and of defendants' arguments, and fails to refute the points made in defendant's Consolidated Memorandum.

Remarkably, plaintiffs still do not even attempt to defend their own application with an explanation (based on specific citations to the administrative record) of how their application met the goals of the National Historic Lighthouse Preservation Act (NHLPA). Nor do they respond to defendants' detailed analysis of the two applications. For example, plaintiffs react to defendants' statement that the Preservation Society's application was incomplete by complaining that an NPS employee "failed to distribute" the "entire version" of their application to the review committee, Pls. Reply at 4, but they do not explain how (or show the Court where) their application included all of the required elements. See Defendants' Consolidated Memorandum (Defs. Mem.) at 7-8, n. 3; AR0618-19. They complain that aspects of their application were "mischaracterized," Pls. Reply at 1-2, but do not point to anything in their application that shows they submitted a plan that passed muster under the Application Guidelines, or that the review

committee's assessment was anything but well-reasoned and based on the Guidelines and NHLPA goals.  Nor do plaintiffs point to any evidence supporting their repeated assertion that the Essex National Heritage Commission (ENHC) was "pre-selected."  See Pls. Reply at 1, 8, 18.  In short, plaintiffs ignore the substantial discussion in defendants' principal brief about the formal, structured review of applications, and the specific deficiencies observed by reviewers in BILPS's application.  Defs. Mem. at 7-9, 13-15.  Instead, plaintiffs defend their "intention," Pls. Reply at 3, and continue their focus on the alleged shortcomings of ENHC's application, unsubstantiated claims of agency "bias" and "whim," and matters outside the record and outside of the mandates of the NLHPA.

Plaintiffs also continue to argue that defendants have committed a "flagrant violation" of the NHLPA by failing to develop the required policy and procedures, Pls. Brief at 3-4, 6-8, but they do not respond, except in the most conclusory fashion, to defendants' detailed explanation of the policies and procedures that are evident in the record.  Contrary to plaintiffs suggestion, Pls. Reply at 4, 6, defendants have not denied that the NHLPA required them to develop a policy and procedures (only that they were not required to promulgate regulations or a "handbook").  Defendants devoted several pages of their principal brief to demonstrating that a policy and procedures were indeed developed, and that they guided the selection process at issue here.  Defs. Mem. at 5-10, 20-24.  Plaintiffs nowhere define what they believe the term "a policy and procedures" means, but they argue that the application materials' failure to address, for example, how "reasonable access" will be determined, is evidence that the defendants "failed to

promulgate" any policy and procedures.[1]  Pls. Reply at 6, 7, 18 (plaintiffs' disappointment "stems from . . . the complete lack of policies and procedures").  That assertion is demonstrably incorrect.  Plaintiffs fail to address defendants' argument that the statutory language requires a "policy and procedures *for identifying, and selecting, an eligible entity*" for the conveyance of the historic light stations, 16 U.S.C. § 470w-7(c)(1)(e) (emphasis added), and their detailed explanation of how the administrative record shows exactly that.  Instead, plaintiffs continue to rely on two cases pertaining to rulemaking and agency regulations to make their point that the agencies here were "commanded by statute to promulgate rules," Pls. Reply at 6, evidencing that plaintiffs still do not understand the legal distinction between "regulations" and "policies and procedures."  See Pulido v. Heckler, 758 F.2d 503 (10th Cir. 1985) and Nelson v. INS, 232 F.3d 258 (1st Cir. 2000).

In reiterating their claim that "defendants" committed "legal error" because they didn't "recognize" that ENHC was not an "eligible entity,"[2] Pls. Reply at 1, 9-11, plaintiffs ignore the NHLPA's definition of "eligible entity," and offer no response to defendants' contention that ENHC, a legal nonprofit corporation, meets that statutory definition.  16 U.S.C. § 470w-7(e)(3)(B).  Given that "jurisdiction" is not part of the NHLPA definition of eligible entities, plaintiffs' argument is really that ENHC should not have been selected.  The evaluation of applications submitted by "eligible entities," however, and the resulting substantive determination by the Secretary of the Interior in selecting a single entity for conveyance of a

---

[1] Plaintiffs themselves failed to propose a Use Plan or program for "reasonable access" in their application, but instead argued why "unlimited public access" was not feasible, even though "unlimited public access" is nowhere required or urged.  See AR176-186.

[2] Of course, this allegation cannot pertain to GSA, which plaintiffs concede had no role in the review of applications or selection of an eligible entity. Pls. Brief at I:8.

light station, is exactly the kind of exercise of agency judgment and expertise entitled to deference under the APA, see Visiting Nurse Assoc. Gregoria Auffant, Inc., v. Thompson, - - - F.3d - - -, 2006 WL 1216613 at *2 (1st Cir. 2006), and here the Secretary's conclusion was well "within the bounds of reasoned decision making." Baltimore Gas and Electric Co. v. Natural Resources Defense Council, 462 U.S. 87, 105-106 (1983). Although plaintiffs disagree with that decision, simply repeating that it was arbitrary and capricious does not make it so. Plaintiffs fail to demonstrate that the Secretary's decision was not based on a "reasoned evaluation of the relevant data." Marsh v. Oregon Natural Res. Council, 490 U.S. 366, 378 (1989).

Plaintiffs also cite language in Division II of the Omnibus Parks and Public Lands Management Act of 1996 (the Act), creating two heritage areas by express reference to county boundaries, to argue that ENHC was "ineligible." Pls. Reply at 10. Both examples, however, pertain to heritage areas composed of several counties, and so the examples cited do not prove plaintiffs' point. Moreover, in Title V of the Act, creating the ENHA, Congress expressly recognized, in the "Findings and Purpose" section, that Salem was "the first major world harbor" in the country, and that the "story" of its historic sites would be "greatly enhanced" through theme-related resources "in Salem and Saugus and *throughout Essex County*." § 501(a)(6) (emphasis added). The Act also expressly states that one purpose of creating the ENHA is to implement certain alternatives (as described, *inter alia*, in the document "The Salem Project: A Study of Alternatives") "*within the boundaries of Essex County*." §501(b)(2) (emphasis added).[3] This language evidences a Congressional intent that the ENHA include Salem, of which Baker's

---

[3] Appendix D of ENHC's Management Plan, based, *inter alia*, on "The Salem Project," AR408, lists Baker's Island as one of the Salem maritime resources within the ENHA. AR419.

Island is a part, and encompass all of Essex County. In any event, however, irrespective of the boundaries of the ENHA, the Act does not create ENHC's "jurisdiction," or limit the ENHC to activities solely within the boundaries of the ENHA. See Defs. Mem. at 15, 17, 19.

Plaintiffs ignore or misconstrue other of defendants' legal arguments, and respond to some contentions defendants have not made. For example, plaintiffs still refer to the Act as "the Commission's enabling legislation," Pls. Reply at 11, and do not acknowledge, as defendants pointed out, that the ENHC is a creature of state, not federal law. Defendants did not "allege" that Congress "intended the jurisdiction of the Commission to be coterminous with Essex County," Pls. Reply at 9, because defendants expressly denied that the ENHC is a federal entity with Congressional limitations on its activities. Defs. Mem. at 15, 17. Plaintiffs also contend that they have not "waived" any arguments, Pls. Reply at 13-14, but defendants did not argue that plaintiffs "waived" arguments that were not raised before the agency. Rather, as the case plaintiffs cite makes clear, this Court cannot consider arguments that were not developed before the agency because there is no record of the agency's consideration of, or decision concerning, issues that were not before it. See Harvard Pilgrim Health Care of New England v. Thompson, 318 F.Supp. 2d 1, 12 (D. R.I. 2004).[4]

---

[4]Plaintiffs' argument that they did not know the "grounds" for many of their claims until the administrative appeal makes no sense in any event. For example, plaintiffs argue that they first learned of the "dichotomy" between the statutory definition of "excess" property and the NHLPA's requirement that light stations be conveyed subject to conditions necessary for the United States to maintain the lighthouse, at the April 2005 Lighthouse conference, but the language of both statutes was available to them from the beginning. They also maintain that they could not know, until their FOIA requests, of defendants' "utter failure" to develop the policy and procedures required by the NHLPA. If there were no policies and procedures guiding the process, however, that would have been evident at the outset (where, for example, should plaintiffs submit their application and what should it include?). Plaintiffs also complain that "absolutely no information" on the appeal procedures was provided to applicants. With plaintiffs' notification by Associate Director Matthews of the recommendation of ENHC to the Secretary, however, BILPS was told that "[i]f the Society requests a review, then a new committee made up of staff from the

Plaintiffs also have not shown how the administrative record was supposedly "cleansed," or what it was "cleansed" of. They include an accurate definition of an administrative record from <u>Towns of Norfolk and Walpole v. U.S. Army Corps of Engineers</u>, 137 F.R.D. 183, 185 (D. Mass. 1991), Pls. Reply at 14-15, but fail to point to a single document that meets the definition but was excluded. The FOIA correspondence, the exhibits to the Draft Handbook, and the materials pertaining to the April 2005 Lighthouse Conference were not "before the agency at the time the decision being reviewed was made," nor were they "considered by agency decision makers" in connection with the application review or ultimate selection of ENHC. See <u>Citizens to Preserve Overton Park, Inc. v. Volpe</u>, 401 U.S. 402, 420 (1971). There was no reason for their being included "in the first instance," Pls. Reply at 2, and no reason to add them now.

Plaintiffs misconstrue administrative law in their argument that this Court can use their affidavits to review "all of the Society's claims," including those not raised before the agency. Pls. Reply at 16-17. The administrative record adequately documents the proceedings and adequately explains the basis for the Secretary's decision; neither plaintiffs' affidavits nor their FOIA correspondence and replies help explain anything related to the agency's decision in the selection of ENHC. In any event, "[o]nly if the record is so scant that it frustrates judicial review" is the court justified "in opening up the record to search for further explanation of the agency's action." <u>Towns of Norfolk and Walpole</u>, 137 F.R.D. at 188. Even were this Court to determine that additional issues needed to be considered, the only proper course would be

---

Department of the Interior's Washington Office, including two subject matter experts and two appointees - one by the National Park Service Director and one by the Assistant Secretary for Fish, Wildlife and Parks - will review both applications and submit their recommendations to the Assistant Secretary." AR0652. Only applicants who are not being recommended need that information, and so plaintiffs' complaint that it was not provided "in the application materials" is of no import, because they cannot show an injury from that "action" sufficient to establish standing under the APA.

remand so that the agency could consider the additional issues in the first instance.  See Olsen v. U.S., 414 F.3d 144, 155 (1st Cir. 2005) (if administrative record "is found inadequate for judicial review, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'") (quoting Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985)); see Davila-Bardales v. I.N.S., 27 F.3d 1, 6 (1st Cir. 1994) (citing Unemployment Comp. Comm'n. Of Alaska v. Aragon, 329 U.S. 143, 155 (1946)).

     Finally, plaintiffs do not even attempt to counter defendants' argument that the FOIA correspondence is simply not part of the administrative record of the agency's proceedings to select the entity to which to convey Baker's Island Light Station.  Nor do they succeed in establishing that five different people, in three different Programs of the National Park Service, all approached their review of the two applications in "bad faith," and that others in the Park Service and Department of the Interior, including the Secretary, likewise "catered to their own whims," Pls. Reply at 7, and treated plaintiffs' application to an "arbitrary review" based on "their own biases."  Id. at 8.  None of the extra-record documents submitted with plaintiffs' principal brief suggest bad faith in the review of applications and selection of ENHC, see BILPS0018, 27-28, 118-120, 123-125, 461, 463, 466, 467, 470-71, 490, although plaintiffs' letters evidence frustration at delays in receiving responses to FOIA requests.  *E.g.*, BILPS0001-2, 5-6, 13-14, 15-17, 20, 22, 464, 469, 472.  Their frustration, however, is not grounds for expanding the record.

     In sum, plaintiffs have not met their burden to show that the agency decision here was arbitrary, capricious, or based on anything other than consideration of the factors relevant to the goals of the NHLPA.  The Court should deny the Motion to Reverse the Decisions and to

Enlarge the Administrative Record, affirm the decision of the Secretary, strike the extra-record documents, and dismiss all unnecessary defendants.

                                  Respectfully submitted,

                                  By their attorney,

                                  MICHAEL J. SULLIVAN
                                United States Attorney

                                /s/ Barbara Healy Smith
                    By:   Barbara Healy Smith
                                Assistant U.S. Attorney
                                John Joseph Moakley U.S. Courthouse

Dated:  22 May 2006                         1 Courthouse Way, Suite 9200
                                Boston, MA 02210
                                (617) 748-3263

---

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                  /s/ Barbara Healy Smith
Dated: 22 May 2006              Barbara Healy Smith
                                  Assistant United States Attorney